## JOSIAH L. FAIRBANKS *et al.*

### *v.*

## JOHN V. FARWELL *et al.*

*Filed at Ottawa May 12, 1892.*

1. CHANCERY SUIT—*commencement, to arrest running of the Statute of Limitations.* The modern rule seems to be, that the filing of a bill and taking out of a subpœna, and making a *bona fide* attempt to serve it, is the commencement of a suit in equity, as against the defendant, so as to prevent the operation of the Statute of Limitations. But it may well be doubted whether the mere filing of a bill, of itself, without the issue or service of process, is sufficient to arrest the running of the statute.

2. CHANCERY PRACTICE—*permitting amendment to a bill by substituting complainant and making a different case.* After this court had decided that a receiver of an insurance company was not entitled to the relief sought by his bill against stockholders, for the reason that he took by his office no greater rights than the corporation had, certain judgment creditors of the corporation filed their intervening petition to be substituted as parties complainant in the place of the receiver, so as to make an entirely different suit, in which they might present equities which the law denied to the receiver. The court denied the petition : *Held,* that there was no error in refusing the prayer of the petition, such an amendment not being warranted by any rule of chancery practice, or by the statute of amendments applicable to the case.

3. While the statute in relation to amendments should receive a liberal construction, it should not be so construed as to make it the duty of the court to permit amendments which not only result in a change of parties, but which also work an entire change in the subject matter of the litigation and the nature and object of the proceeding.

4. The consent of a complainant in a bill that another claiming different equities may be substituted in his place and control the litigation, will not give such other persons a legal right to be substituted which the court may not refuse. The most that can be said is, that such consent invests the court with a discretion to grant or refuse the application for the substitution.

5. SAME—*party seeking substitution—how presented to the court.* A party seeking to be substituted as complainant in a bill should bring up the record in the original case, so that this court may see the condition of the same at the time of the application, otherwise it will be presumed, in favor of the action in refusing his application, that a valid reason existed for the ruling. Every presumption will be indulged in support of the decision of the circuit court.

6. PRACTICE IN THE SUPREME COURT—*party not joining in appeal.* Where a party whose motion to have another person substituted in his place as complainant is overruled, fails to join with others in an appeal from the order of the court denying the motion, it will be presumed that he is satisfied with the ruling.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

Messrs. HUTCHINSON & LUFF, for the appellants:

Under section 24 of the Practice act new plaintiffs may be substituted for the original plaintiffs. *Insurance Co.* v. *Ludwig,* 108 Ill. 514; *Chandler* v. *Frost,* 88 id. 559; *Insurance Co.* v. *Mueller,* 77 id. 22; *Challenor* v. *Niles,* 78 id. 78; *Lewis* v. *Austin,* 144 Mass. 383; *Buckminster* v. *Wright,* 59 N. H. 153.

Liberal amendments are allowed in equity cases, and the Illinois practice has not been so rigid as in New York and England, in regard to amendments. *Gregg* v. *Brower,* 67 Ill. 525; *Marble* v. *Bonhotel,* 35 id. 240; *Marsh* v. *Green,* 79 id. 385.

The provisions of law allowing amendments are highly remedial, and are construed most liberally to correct error and mistake and to advance justice and right. *Davenport* v. *Holland,* 2 Cush. 1.

The amendment should be allowed under the rules relating to amendments, adopted by courts of equity. The right to amend the bill by substituting new complainants is sustained by the following cases in equity: *Jennings* v. *Springs,* Bailey, 181; *Lottman* v. *Barnett,* 62 Mo. 159; *Judge of Probate* v. *Jackson,* 58 N. H. 458; *Smith* v. *Hadley,* 64 id. 97; *Griffin* v. *Sheley,* 55 Iowa, 513.

The amendment should be allowed under section 1, chapter 7, of the Revised Statutes, which provides that the court shall have power to permit amendments of any process, pleading or proceeding, either in form or substance, for the furtherance of justice.

Amendments are allowed expressly to save the bar of the Statute of Limitations, and courts have been liberal in allowing them when the cause of action is not totally different. *George* v. *Reed*, 101 Mass. 378; *Davenport* v. *Holland*, 2 Cush. 1; *Lottman* v. *Barnett*, 62 Mo. 159; *Seipel* v. *Extension Co.* 129 Pa. St. 425; *Pulteney* v. *Warren*, 6 Ves. 73; Angell on Limitations, sec. 30.

In a suit by an administrator to remove an incumbrance, if the right to sue is not questioned in the trial court, the decree removing the incumbrance will be sustained. *Gridley* v. *Watson*, 53 Ill. 186; *Thomas* v. *Adams*, 30 id. 37; *Knapp* v. *Marshall*, 26 id. 63; *Howell* v. *Peoria*, 90 id. 104.

A court of chancery has jurisdiction. The bill was filed on behalf of the creditors, against parties liable to the creditors, and the petitioners are the creditors on whose behalf the bill was filed. They are judgment creditors, and can prosecute the suit to a final decree without making any material change in the bill. The court having obtained jurisdiction by the petition of one judgment creditor, all the other creditors may come in and have their rights adjudicated, and share in the assets. *Eames* v. *Doris*, 102 Ill. 350; *Queenan* v. *Palmer*, 117 id. 619; *Woolverton* v. *Taylor*, 132 id. 197; *Pennell* v. *Insurance Co.* 73 id. 303.

If a judge rules, as a matter of law, that a particular amendment is not allowable, while it is in his discretion to allow it, exceptions may be taken to such ruling, and error assigned thereon. *Chandler* v. *Frost*, 88 Ill. 559; *Rowell* v. *Small*, 30 Me. 30; *Davenport* v. *Holland*, 2 Cush. 1; *Wood* v. *Philadelphia*, 27 Pa. 502.

Mr. GEORGE F. WESTOVER, for the appellees:

Leave to amend so as to present the merits of the case should be granted, and is not discretionary. (*Insurance Co.* v. *Trust Co.* 1 Bradw. 391.) On the trial, however, it is discretionary. *Insurance Co.* v. *McGinnis*, 87 Ill. 70.

In proper cases, where there be no changes in the remedy, causes of action or rights of the parties, changes may be made from the beneficial plaintiff to the proper plaintiff. *Insurance Co.* v. *Ludwig,* 108 Ill. 514; *Honore* v. *Wilshire,* 109 id. 103; *McDowell* v. *Town,* 90 id. 359.

As to amendments which change the cause of action, see *Hall* v. *School District,* 36 Mo. App. 21; *Howes* v. *Patterson,* 76 Ga. 689.

The proposed amendment introduced a new cause of action, to which the Statute of Limitations would apply.

The appointment of a receiver did not deprive creditors of the corporation of the right to maintain a bill, and there being no excuse for the delay, their cause of action is barred. *Good-body* v. *Goodbody,* 95 Ill. 456.

It is error to amend setting up a cause of action arising after suit is brought. *Trust Co.* v. *Trust Co.* 47 Hun, 315; *Fickett* v. *Cohn,* 1 N. Y. 436.

The receiver could bring action by reason, only, of some right in the corporation. The creditors could bring action by reason, only, of some right in themselves. Therefore when, by amendment, new parties are made and new rights brought in which are already barred, the Statute of Limitations may be pleaded. *Railway Co.* v. *Jenkins,* 103 Ill. 588; *Phelps* v. *Railroad Co.* 94 id. 548.

In law, a new court can not escape the statute. *Rolling Mill Co.* v. *Monka,* 107 Ill. 340.

New matter is not noticed even as *lis pendens,* except from the time of the amendment. *Bradley* v. *Luce,* 99 Ill. 234.

Petitioners cite section 24 of the Practice act to show that the adjudicature of a court allowing an amendment is "conclusive evidence of the identity of the action." The same section says, any party may be introduced "necessary to be joined as plaintiff or defendant," or suit may be discontinued "as to any joint plaintiff or joint defendant," or the "form of action" may be changed. It is very necessary, in view of such

promises of amendment, that the identity of the action be preserved. No statute could ever undertake to enact that dissimilar causes of action should be made identical by adjudication.

The section referred to belongs to the practice act concerning suits at law. Amendments in chancery are regulated by section 37 of the Chancery act.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

On the 7th day of May, 1878, Samuel D. Ward, the receiver of the Republic Life Insurance Company, filed his bill in chancery, in the Circuit Court of Cook county, against John V. Farwell and numerous other defendants, alleging that said defendants were subscribers to the capital stock of said insurance company, and were liable to said company for certain unpaid portions of their respective subscriptions, and seeking to enforce such liability for the purpose of collecting a fund for the payment of the indebtedness of said company. Said bill alleged, among other things, in substance, that the Auditor of Public Accounts having filed in said court his petition against said company, under the act in relation to the dissolution of insurance companies, praying that said company be restrained from further prosecuting its insurance business, and that a receiver be appointed to take charge of its property and effects, the complainant was, on the 25th day of March, 1877, duly appointed receiver of said company, with power to take possession of its property and effects, and to institute any and all necessary proceedings for the recovery of the same; that at the same time, said company was restrained from further prosecution of its said business, from receiving and paying out money, and from transferring its property, except to said receiver; that said company was also ordered to convey and assign to said receiver all its estate, property and assets of every nature, and that in obedience to said order, said conveyance and assignment were made.

Said bill further alleged that, at a meeting of the stockholders of said company, held June 11, 1873, certain resolutions were adopted, instructing and empowering the directors of said company to receive from such stockholders as should so desire, and to cancel, all outstanding certificates of stock of said company upon which but twenty per cent had been paid, and to issue in lieu thereof to each stockholder new full paid certificates for the number of shares represented by the twenty per cent already paid, and that the residue of the stock of said company should be held as unissued stock, subject to sale and issue, but only at par and for cash, less expenses and commissions; that in pursuance of said resolutions, a large number of the subscribers to the capital stock of said company, surrendered their certificates of stock upon which but twenty per cent had been paid, and received in lieu thereof certificates for one fifth of the number of shares so surrendered, in full paid stock; that most of the liabilities of said company were contracted before the passage of said resolutions, and before the surrender of said certificates of stock in pursuance thereof; that said receiver knew of no resources out of which he would be able to realize any money to pay the balance of the liabilities of said company over and above a small per cent thereof, unless the same should be collected from said stockholders and subscribers to said capital stock.

Said bill alleged and charged that said surrender of said certificates of stock, and the acceptance by said stockholders of certificates of full paid stock for twenty per cent thereof, was illegal, fraudulent and void as to the creditors of said company, and that the subscribers for said stock, as well as those to whom said certificates had been transferred by assignment, remained, notwithstanding such surrender, liable respectively for the debts of said company, to the full amount unpaid on their respective subscriptions.

It is further alleged that, on the 31st day of January, 1878, on petition of said receiver, an order was entered by said court, in said suit of the Auditor against said company, that said receiver be authorized and directed to institute such legal or equitable proceedings as he might be advised were necessary and proper, against the subscribers to the stock and the stockholders of said company, or against such of them as he should be advised were or might be indebted to said company, and he was thereby directed to institute such proceedings against resident and non-resident subscribers or stockholders, or either of them, and proceed therein with convenient speed, for the purpose of collecting a fund sufficient to pay the debts and liabilities of said company. In pursuance of that order said bill was filed.

The bill further alleges that, on the 31st day of January, 1878, the Texas Banking and Insurance Company, a judgment creditor of said Republic Life Insurance Company, commenced an action at law in the Superior Court of Cook county against said John V. Farwell, alleging that said Farwell was a subscriber to the capital stock of said Republic Life Insurance Company, and that eighty per cent of his subscription remained unpaid; and that he was therefore liable to said plaintiff under the following provision of section six of the act incorporating said Republic Life Insurance Company, viz: "The real and personal property of each individual stockholder shall be held liable for any and all losses and liabilities of the company to the amount of stock subscribed or held by him, and not actually paid in. In all cases of losses exceeding the means of the corporation, each stockholder shall be held liable to the amount of unpaid stock held by him;" also that, on the 19th day of February, 1878, Nannie H. Blair and others, simple contract creditors of said insurance company, commenced a suit at law for the collection of their debt, in the Circuit Court of the United States for the Northern District of Illinois, against Franklin D. Gray, alleging that he was a

subscriber to the capital stock of said company, and had paid only twenty per cent of his subscription; that said suits were still pending, and, unless enjoined, would be prosecuted to judgment.

Said bill prayed for an injunction restraining the prosecution of said suits at law, and that an account be taken of the liabilities of said Republic Life Insurance Company, and of the percentage necessary to be assessed on the capital stock of said company to pay the same, and that, upon the final hearing, a decree be entered declaring said resolution adopted at said stockholders' meeting of June 11, 1873, illegal, fraudulent and void, and that the stockholders who had surrendered their certificates, and who were living, and the representatives of those who were dead, be placed on the same footing, and be held liable for assessments on said stock, to the same extent, as they would have been if no surrender of said certificates of stock had been made; that said court make or cause to be made an assessment of not less than sixty per cent upon all the stockholders, or their personal representatives, without regard to said surrender of said certificates of stock, or make or cause to be made, such other assessment as should be warranted by the evidence and the law, and also a general prayer for relief.

The transcript of the record before us shows no proceedings in the matter of said bill, or whether the defendants therein named, or any of them, were served with process, or whether any process was issued, prior to March 20, 1891, the date of filing the petition for a change or substitution of parties complainant, the denial of which is now assigned for error. On the day last named, Josiah L. Fairbanks and Horace S. Tucker filed in said cause a petition, on behalf of themselves and all other creditors of said Republic Life Insurance Company who should join therein and pay their proportion of the expenses of the suit, representing that, on the 21st day of June, 1880, said petitioners recovered a judgment against

said insurance company, in the Circuit Court of Cook county, for $714 and costs; that the petitioners thereupon sued out an execution thereon and delivered the same to the sheriff of Cook county to execute, and that said sheriff, on or about January 26, 1880, returned said execution wholly unsatisfied, and that said judgment is still wholly unpaid; that said petitioners adopt said bill filed by said receiver and make the same a part of their petition, and they allege that the defendants to said bill are liable to pay said petitioners the amount due upon their said judgment; that the capital stock of said insurance company was 50,000 shares of $100 each; that the stockholders of said company are more than 1200 in number; that many of them reside out of this State, and in many different States and in foreign countries, so that the process of said court can not be served upon them; that the petitioners' claim was a subsisting obligation, and the petitioners were among the creditors of said insurance company, on the 1st day of January, 1873, and at the time of the appointment of the complainant as receiver, and at the time of the filing of said bill, and that their claim is one of the debts and liabilities of said insurance company for the payment of which said bill seeks to have an assessment made on the stockholders of said insurance company, and is one of the claims referred to in said bill; that as the Supreme Court of this State has decided that the complainant, as receiver of said insurance company, can not maintain said suit, the petitioners pray that they may be substituted as complainants therein in place of said receiver, and be allowed to prosecute the same for the benefit of themselves, and such other creditors of said insurance company as shall join in and pay their proportion of the expenses of said suit.

On the same day a like petition was filed by Hannah M. Remmington, representing that she recovered a judgment against said insurance company, on the 23d day of January, 1878, in the Circuit Court of the United States for the North-

ern District of Illinois, for the sum of $3743.25 and costs, the claim for which said judgment was rendered being upon a policy of insurance upon which the liability of said insurance company accrued prior to the passage of said resolutions in relation to the surrender of said stock certificates, and prior to their surrender; that execution on said judgment was duly issued and delivered to the marshal to execute, and was afterwards returned by him wholly unsatisfied, and that the said judgment still remains in full force and effect and wholly unsatisfied.

Said petitions were both heard by the Circuit Court and denied, and separate appeals having been taken by the respective petitioners to the Appellate Court from the orders denying said petitions, said orders were affirmed. Said judgments of affirmance are now brought here by two separate appeals, but said appeals have been argued together and submitted in this court as one case, and will be so considered.

The only question presented is, whether the Circuit Court erred in refusing to allow said bill to be amended by substituting the petitioners as complainants therein in place of the receiver. Although the fact is not shown by the records before us, except by a mere reference or recital in one of the petitions, yet it is conceded by counsel on both sides, and perhaps may be noticed by us judicially, that upon review by this court of the record of the proceedings in the suit in which the receiver was appointed, the order in pursuance of which the receiver filed the present bill was held to be erroneous, and was therefore reversed and set aside. *Republic Life Ins. Co.* v. *Swigert,* 135 Ill. 150. In that decision it was held, in substance, that the transaction by which the stockholders of said company who had paid only twenty per cent of their subscriptions, were permitted to surrender their certificates of stock and receive in lieu thereof full paid certificates for twenty per cent of their subscriptions, was valid and binding so far as the company was concerned, and operated as an effectual

discharge of the liability of said stockholders to the company for the remaining eighty per cent. It was also held, that the receiver succeeded only to the property, rights and assets of the insurance company, and that neither under the order by which he was appointed, nor under the assignment from the company to him, did he take any interest, either legal or equitable, in the eighty per cent of said subscriptions from which the stockholders had been discharged, nor in any claim or right which the creditors of the company might have to treat such discharge as fraudulent and void, and to enforce, in their own behalf, the liability of the stockholders for such unpaid subscriptions. Upon the principles thus established, the conclusion was reached, that the order of the Circuit Court authorizing and directing said receiver to sue for and recover said unpaid subscriptions, was erroneous and unauthorized, and it was accordingly reversed.

Applying the doctrine of that decision, it must be held, that the receiver, at the time he filed his bill against the stockholders of said company, was a mere stranger to the liabilities which he was thereby seeking to enforce. In our opinion filed in that case, we said: "We understand the rule to be, that where a receiver is appointed for the purpose of taking charge of the property and assets of a corporation, he is, for the purposes of determining the nature and extent of his title, regarded as representing the corporate body itself, and not its creditors or shareholders, being vested by law with the estate of the corporation, and deriving his own title under and through it, and that, for the purposes of litigation, he takes the rights of the corporation, such as could be asserted in its own name, and that, upon that basis only, can he litigate for the benefit of shareholders or creditors."

The receiver having filed his bill to reach assets to which he had no title and to which he was an entire stranger, and the want of equity in his bill having been demonstrated by the decision of this court, the creditors of the insurance com-

pany, who claim to have rights and equities of their own, which the receiver did not represent and which he was incapable of asserting, are now asking to be let in to the litigation as parties complainant, and to be permitted to give life and vitality to the bill, by infusing into it their equities, with the view of placing themelves in the same position in which they would have been if they had been complainants *ab initio.* Such an amendment would seem to be unwarranted by any rule of chancery practice, or by the provisions of any statute of amendments applicable to the case. It is, in effect, an attempted substitution of new complainants, a new cause of action, and a new and different proceeding, so as to transform the suit into a litigation of a substantively new and different character. It is true the receiver seeks by his bill to collect the unpaid eighty per cent of the stockholders' subscription, which is the same fund that the petitioners are seeking to subject to the payment of their claims, but the identity of the fund which the parties are endeavoring to reach is not the true test of the identity of the action. They are attempting to reach said fund upon wholly different grounds and by the assertion of essentially different if not adverse titles. The receiver claims said unpaid subscriptions as a part of the estate of the insurance company, and consequently a part of the assets to which he obtained title by virtue of his appointment as receiver and the assignment from the insurance company to him. The pending suit, so far as it has or ever had any legal basis, is simply a bill in aid of the proceeding by the receiver to restrain the insurance company from continuing its insurance business and to wind up its affairs. But the claim of the petitioners is virtually in denial of the right of the receiver to collect said fund. They, as creditors, are seeking to reach it and subject it to the payment of their debts, by the assertion of a trust in their favor, arising as a legal result from the fraudulent act of the insurance company in making a voluntary surrender and relinquishment to its

stockholders of its right to collect the unpaid eighty per cent of their subscriptions. Upon the theory of the bill, the petitioners are entitled to no relief, the title to said fund and the right to collect and distribute it being exclusively in the receiver. Upon the theory of the petitioners, the receiver is without equity, the cancelled subscriptions being matters with which he has no concern, and which can be reached only by the creditors of the insurance company, by creditors' bill, after having exhausted their legal remedies. Our statutes in relation to amendments are liberal and should receive a liberal construction, but we do not think they should be so construed as to make it the duty of the court to permit amendments which not only result in a change of parties, but which also work an entire change in the subject matter of the litigation and the nature and objects of the proceeding.

It should be observed that the only question before us is, whether the petitioners, upon the case made by their petition, have such legal right to be substituted as complainants in place of the receiver, that the refusal to allow such substitution was error. We have nothing to do with such amendments to the bill as the court might have permitted or denied in the proper exercise of its discretion. The petitioners are attempting to intervene in a suit to which they are not parties, and the prosecution of which they have no right to control. If they have equities which are denied them, they have the same right that other parties have to bring their own suit for the assertion of such equities. But their right to be substituted as complainants in a suit brought by another, so as to take charge of and prosecute such suit in place of the original complainant, is quite another matter. The party bringing a suit has ordinarily the right to control and prosecute it to its final termination. This is always the case where the suit is brought by a complainant in his own right, and not merely as the trustee and representative of another. In the sense in which the words are here used, the receiver brought the pres-

ent suit in his own right, and it is impossible to see upon what principle a person, not a party to the suit, even though he be a creditor of the insurance company, can set up a right, which the court can not without error refuse to recognize, to be substituted as complainant, and be permitted to prosecute the suit in his own behalf.

But it is said that the receiver consented to the substitution, and even entered his motion that it be made. That seems to be true, but the receiver has not appealed, nor is he complaining that his motion was not sustained. It is to be presumed therefore that he is content with the decision, and is satisfied to remain, as he has a right to remain, the party complainant, until the suit is disposed of by final decree. The petitioners are the only appellants, and their right to complain of the denial of their petition depends upon whether the consent of the receiver to the substitution gave them a legal right to be substituted as complainants which the court had no right to disregard. We are not prepared to say that such could be its effect. The utmost that can be said is, that it thereby became discretionary with the court to grant or refuse the petition for substitution of complainants, as, in view of all the equities of the case, it might think proper.

But there is another reason why it is impossible for us to say that the order of the Circuit Court refusing the substitution of parties complainant was erroneous. We have not before us a complete record of the proceedings in the suit by the receiver, and no means of knowing its condition at the time the petition for such substitution was presented to the court. Counsel for the appellants, instead of bringing up the entire record, have brought nothing pertaining to the receiver's suit except the bill. Beside that, we have nothing in the transcript except the petitions for substitution and the proceedings thereon. So far as we can know, there may have been a final decree in the receiver's suit many terms before the appellants' petitions were filed, or the state of the

record may have been such in some other respect as to preclude any substitution of complainants. Every presumption will be indulged in, in support of the decision of the Circuit Court, which is not negatived or precluded by the record before us, and the contrary not being shown in the fragments of the record brought to this court, we may presume, if such presumption becomes material, that said court denied said petitions for valid and sufficient reasons, arising from the existing condition of the receiver's suit or from previous proceedings therein, in relation to which the transcript is silent.

The principal if not the only object of the petitioners in seeking to be substituted as complainants in the receiver's suit seems to be, to avoid the bar of the Statute of Limitations; and it is insisted that, if such result can be reached by the substitution, the courts should be strongly inclined to favor it. Whether such should be the inclination of the judicial mind or not, it is worthy of remark that the portion of the record brought here by the transcript leaves it at least doubtful whether the substitution prayed for would be of any avail to the petitioners by way of relieving them from the statutory bar. As has already been said, the transcript shows a bill filed by the receiver May 7, 1878, but it is not shown that, up to the time of the filing of said petitions, any process was issued on said bill, or that the appearance of any of the defendants was entered. It may well be doubted whether the mere filing of a bill in chancery, of itself, without the issuing or service of process, is sufficient to arrest the running of the statute. The modern rule seems to be, that the filing of a bill and taking out of a subpœna and making a bona fide attempt to serve it, is the commencement of a suit in equity, as against the defendant, so as to prevent the operation of the statute. Angell on Limitations, sec. 320; Buswell on Limitations, sec. 320; Bennett on Lis Pendens, sec. 58. It not being shown that the pending suit was so commenced as to arrest the running of the statute, it is not

shown that the petitioners would obtain any advantage in that respect by being substituted as parties complainant therein, and that reason for urging the reversal of the order of the Circuit Court therefore fails.

We see no tenable ground for reversing said order, and the judgment of the Appellate Court affirming it will accordingly be affirmed.

*Judgment affirmed.*

MAGRUDER, C. J., took no part in the decision of this case.