DIVERSIFIED FINANCIAL SYSTEMS, INC., Plaintiff-Appellant, v. NANCY BOYD *et al.*, Defendants-Appellees.

Fourth District    No. 4—96—0218

Opinion filed February 25, 1997.

James W. Johnson and David K. Cox (argued), both of Johnson, Stricklin & Waller, of Decatur, for appellant.

H. Kent Heller and David Stevens (argued), both of Heller, Holmes & Associates, P.C., of Mattoon, for appellees Jill Phillips and Tom Phillips.

Gary Edward Orr (argued), of Orr, Dvorak & Associates, Ltd., of East Peoria, for other appellees.

JUSTICE COOK delivered the opinion of the court:

Diversified Financial Systems (DFS) filed this mortgage foreclosure suit in March 1994. Seventeen of the eighteen defendants (all but Magna Bank) moved for summary judgment on the grounds they had been absolved of indebtedness on the underlying notes in a federal lawsuit involving DFS' predecessor in interest. Accordingly,

they argued, this suit was barred as *res judicata*. The trial court granted the motion. DFS appeals. We reverse and remand.

The case on which defendants base their *res judicata* defense is Jackson v. First National Bank (Nos. 88—2273, 88—2275, 88—2276, 88—2290) (*Jackson*), filed in the United States District Court for the Central District of Illinois, Danville. The record before us does not indicate the nature of the complaint in *Jackson*, but it is uncontroverted that the Federal Deposit Insurance Corporation (FDIC) was a defendant. In May 1989 FDIC filed a counterclaim for the amount owed on certain promissory notes. All but one of the defendants in this case were counterdefendants in *Jackson* (the exception is Magna Bank), and the notes on which FDIC counterclaimed were those underlying the mortgage which DFS is now attempting to foreclose. In November 1993, while *Jackson* was still pending, FDIC "bulk sold" the notes to DFS.

After learning of the sale in December 1993, counsel for FDIC filed a motion to withdraw from *Jackson* on the grounds that FDIC had no remaining interest in the case. On January 13, 1994, it served that motion on opposing counsel and the president of DFS by mail. The motion indicated there were no other motions pending and a trial date had not been set. It "advised" DFS to retain separate counsel and file an appearance in federal court, and stated there would be a hearing on its motion to withdraw on January 19, six days later.

On January 17, two days before the scheduled hearing, several counterdefendants filed a motion to dismiss FDIC's counterclaim pursuant to Rule 12(b) of the Federal Rules of Civil Procedure (Fed. R. Civ. P. 12(b)), because FDIC "no longer ha[d] an interest in the subject matter of the instant litigation." Although the motion averred FDIC had sold the notes to DFS, DFS was not served with the motion. On January 20, the federal court granted both motions, dismissing the counterclaim "with prejudice for lack of a plaintiff and for lack of prosecution under Federal Rules of Civil Procedure 16(f), 41(b), and 37(b) [(Fed. Rules Civ. P. 16(f), 41(b), 37(b))]." The court's order indicates only plaintiffs and counterdefendants (not counterplaintiff FDIC and not DFS) appeared at the January 19 hearing.

## ANALYSIS

◼ The elements of *res judicata* are the same under federal and Illinois law: (1) a final judgment on the merits rendered by a court of competent jurisdiction; (2) identity of cause of action; and (3) identity of parties or their privies. *People ex rel. Burris v. Progressive Land Developers, Inc.*, 151 Ill. 2d 285, 294, 602 N.E.2d 820, 825 (1992);

*Brzostowski v. Laidlaw Waste Systems, Inc.*, 49 F.3d 337, 338 (7th Cir. 1995). The burden of proof is on the party invoking the doctrine. *Torcasso v. Standard Outdoor Sales, Inc.*, 157 Ill. 2d 484, 491, 626 N.E.2d 225, 228 (1993); *Appley v. West*, 832 F.2d 1021, 1025 (7th Cir. 1987), citing *Gildorn Savings Ass'n v. Commerce Savings Ass'n*, 804 F.2d 390, 393 (7th Cir. 1986). The dispute in this case concerns the first and third requirements.

■ Defendants also make the threshold argument that DFS should be barred from any complaint about the judgment because it did not pursue any remedies in the federal system. Said another way, defendants' argument is that even if DFS was not a party or privy to the federal case, and is accordingly not bound under principles of *res judicata*, DFS is nevertheless somehow bound by the federal judgment. Defendants argue DFS should have entered the federal case and sought to overturn the judgment that had been entered. We reject that argument. If DFS was not bound under principles of *res judicata*, DFS was not required to enter the federal case.

## I. FDIC WAS NOT DFS' REPRESENTATIVE IN THE FEDERAL CASE

Defendants argue that successors to interests in property are in privity with their transferors, quoting the following language from *Schafer v. Robillard*, 370 Ill. 92, 100, 17 N.E.2d 963, 967 (1938):

> "[I]t is only parties and their privies, in blood or estate, that are estopped by a decree or judgment. Parties to a decree, in the eye of the law, are those, only, who are named as such in the record, and are properly served with process or enter their appearance. A privy in blood or estate is one who derives title to the property in question by descent or purchase. A privy to a judgment or decree is one whose succession to the rights of property thereby affected occurred after the institution of the particular suit, and from a party thereto."

■ *Schafer* made a distinction between a "privy in blood or estate" and a "privy to a judgment or decree." The reference to a "privy in blood or estate" does no more than set out the familiar rule that a transferee of property can acquire no title greater than that possessed by its transferor. If FDIC had accepted payments on these notes, or compromised the notes, and then transferred the notes to DFS, DFS would be bound to recognize those payments or compromises. Judgments of execution or injunction affecting the notes would be much the same. A judgment that determines interests in real or personal property is in effect a conveyance from the losing party to the winning party. See Restatement (Second) of Judgments § 43, Comment *a*, at 2 (1982); *Varley v. Pickens*, 98 Ill. App. 3d 884, 424

N.E.2d 981 (1981) (judgment in 1974 zoning case binding on 1979 purchaser of property). However, once the transfer is made, the actions of the transferor no longer bind the transferee. Where the transferor becomes a party to an action concerning property, after it has been transferred, his becoming a party "does not make him in any sense a representative of his successor in estate." Restatement (Second) of Judgments § 44, Comment *f*, at 12 (1982).

■ Privity is said to exist between parties who adequately represent the same legal interests. *In re Marriage of Mesecher*, 272 Ill. App. 3d 73, 76, 650 N.E.2d 294, 296 (1995) (no privity between Illinois Department of Public Aid and custodial mother in action for past-due child support). The word "privity" is not a precise one, and it is no longer used by the Restatement. The Restatement asks instead whether the nonparty controls the presentation of the case (Restatement (Second) of Judgments § 39 (1982)) or agrees to be bound by the determination (Restatement (Second) of Judgments § 40 (1982)) or whether the nonparty is represented by a party (Restatement (Second) of Judgments § 41 (1982)). Representatives under the Restatement are restricted to five specific categories: trustees, persons authorized by the nonparty, executors, authorized public officials, and class representatives designated by a court. Restatement (Second) of Judgments § 41(1) (1982).

It is difficult to view FDIC as the representative of DFS under the general rule. FDIC was simply the predecessor to DFS, and when DFS acquired the notes, FDIC's interest in them came to an end. Perhaps if FDIC had only sold an interest in the notes, and continued to own a partial interest, DFS and FDIC might have agreed that FDIC would handle the litigation. The mere fact of co-ownership, however, does not make co-owners representatives of each other. "Indeed, the very relationship of co-ownership is a source of continuing potential conflict among them." Restatement (Second) of Judgments § 54, Comment *a*, at 66 (1982).

■ The policy concern here is to avoid a situation where everyone engages in litigation with the expectation that the matter will be finally resolved, but then when the judgment is entered, the loser argues that he is not bound by it, or his opponent is not entitled to its benefits, because he or the opponent was not a party or privy. "[T]he party opposing the representative is entitled to assume that the representative participates in a way that will bind those whom he represents unless the circumstances warn the opposing party that there is doubt about the matter." Restatement (Second) of Judgments § 42, Comment *a*, at 406 (1982). The question is whether there was justifiable reliance on the part of the opposing party.

■ There is a special rule where property is transferred to a successor while litigation is pending. In the words of *Schafer*, "one whose succession to the rights of property thereby affected occurred after the institution of the particular suit, and from a party thereto" is "[a] privy to a judgment or decree." *Schafer*, 370 Ill. at 100, 17 N.E.2d at 967. Of course, if the successor is aware of the litigation and joins in it, he is bound as a party. If the successor is aware of the litigation but does not join, "he acquiesces in the transferor's continuing, for purposes of the litigation, to be the apparent owner of the interest in the property." Restatement (Second) of Judgments § 44, Comment *a*, at 10-11 (1982). Where the successor is not aware of the pending action, and the opposing party is not aware of the transfer, the equities still warrant placing the burden on the successor. There is a different result, however, "if the opposing party knows of the transfer and is aware also that the successor does not know of the pending action." Restatement (Second) of Judgments § 44, Comment *d*, at 11-12 (1982). In that circumstance, the opposing party has no just reason to rely on the fact that the transferor is still the nominal party to the action, and if the opposing party fails to notify the successor of the action, he may not avail himself of the benefit of the judgment. Restatement (Second) of Judgments § 44, Comment *d*, at 12 (1982).

■ The successor's knowledge must come at a meaningful time, when the successor has the opportunity to act on that knowledge. In the present case DFS had no knowledge the action remained pending. DFS' only knowledge was that FDIC had no interest in the case and that FDIC's attorneys were withdrawing. There is no indication DFS expected the case to continue without its participation. Neither DFS nor FDIC nor FDIC's attorneys did anything that could have misled the debtors in this case.

The responsibility of the opposing party to take notice of changes in ownership is even stronger where the property consists of an obligation that is capable of assignment. It is anticipated that such obligations will be transferred, and the law requires obligors to be alert for such occurrences.

> "If the action is brought by one who lacks authority to discharge the obligation (for example, an assignor after notice of assignment), it is the obligor's responsibility to raise that issue; if he fails to do so, the judgment does not discharge him, just as he would not be discharged by making a voluntary payment to the assignor after notice. If the obligor is in doubt as to whom the obligation is owed, he may use interpleader or a comparable remedy." Restatement (Second) of Judgments § 55, Comment *a*, at 69 (1982).

In the present case FDIC assigned the notes and mortgages to DFS, and the debtors had notice of that fact. Even if the debtors were not given formal notice, so long as they were "aware of the events occurring after commencement of the action," they may be denied the right to claim discharge through the judgment. Restatement (Second) of Judgments § 55, Comment *b*, at 70 (1982).

"[T]he requisite privity must be found in the substantial identity of the incentives of the earlier party with those of the party against whom *res judicata* is asserted." *Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 346 (2d Cir. 1995) (dismissal of suit after sale of property does not bar an action by the nonparty purchaser). Once FDIC sold the notes to DFS it had no incentive to pursue its counterclaim, and DFS is therefore "not precluded by [FDIC's] abandonment of its litigation." *Chase Manhattan*, 56 F.3d at 347.

## II. FDIC WAS DIVESTED OF AUTHORITY AND DID NOT REPRESENT DFS' INTERESTS ADEQUATELY

■ Even if we assume that FDIC was the representative of DFS in the bankruptcy action, there are exceptions to the rule that a nonparty will be bound if he is represented in an action. One exception exists where the representative is divested of authority before the rendition of the judgment. Restatement (Second) of Judgments § 42(1)(c) (1982). Such divestment occurred in this case once FDIC no longer had an interest in the litigation and its attorneys were allowed to withdraw.

■ Perhaps FDIC's attorneys should have attended the hearing where the district judge acted on their motion to withdraw. Although tactical mistakes or negligence on the part of the representative are not as such sufficient to render the judgment vulnerable, "[w]here the representative's management of the litigation is so grossly deficient as to be apparent to the opposing party, it likewise creates no justifiable reliance interest in the adjudication on the part of the opposing party." Restatement (Second) of Judgments § 42, Comment *f*, at 411 (1982); see also Restatement (Second) of Judgments § 42(1)(e) (1982). Even assuming FDIC at one point represented DFS in the bankruptcy action, the circumstances were such in this case that the debtors were warned that there were doubts about the representation.

■ A nonparty is subject to *res judicata* effects of a suit only if its interests were adequately represented. *In re L&S Industries, Inc.*, 989 F.2d 929, 934 (7th Cir. 1993); *Mesecher*, 272 Ill. App. 3d at 76, 650 N.E.2d at 296, citing *Progressive Land Developers*, 151 Ill. 2d at 296, 602 N.E.2d at 825. A party will not be bound if its representative

"fail[s] to prosecute or defend the action with due diligence and reasonable prudence and the opposing party was on notice of facts making that failure apparent." Restatement (Second) of Judgments § 75(2), at 209 (1982). Both conditions for denying application of *res judicata* are clearly satisfied in this case.

■ As soon as FDIC's counsel learned of the sale it moved to withdraw, on the grounds that FDIC no longer had any interest in the case. The debtors were aware of this motion and were aware that the notes had been sold to DFS. They moved to dismiss FDIC's counterclaim without notifying DFS, knowing that the earlier motion to withdraw stated there were no other motions pending. FDIC not only failed to respond to the motion to dismiss, it did not show up at the hearing thereon. FDIC did not challenge the dismissal nor does it appear it bothered to notify DFS thereof. FDIC did nothing to protect DFS' interests with the possible exception of advising it to retain counsel and appear. Assuming FDIC was DFS' representative, its representation was so obviously inadequate that DFS cannot be bound by the judgment.

### III. WAS THE FEDERAL COURT'S DISMISSAL A FINAL JUDGMENT ON THE MERITS?

Because of our resolution of the foregoing issues, we need not address the question whether an involuntary dismissal in a federal case which would be considered a judgment on the merits by the federal courts, but not by Illinois courts because of Supreme Court Rule 273 (134 Ill. 2d R. 273), may be refiled in an Illinois court. Compare *Blaszczak v. City of Palos Hills*, 123 Ill. App. 3d 699, 702-03, 463 N.E.2d 762, 765 (1984), and *Martin-Trigona v. Gouletas*, 105 Ill. App. 3d 28, 30, 433 N.E.2d 1132, 1134 (1982) (federal court dismissal for failure to prosecute must be given *res judicata* effect in subsequent action in Illinois state courts), with *Aronson v. North Park College*, 94 Ill. App. 3d 211, 215, 418 N.E.2d 776, 780 (1981) (opposite).

### IV. CONCLUSION

For the reasons stated, we reverse the decision of the circuit court of Macon County dismissing DFS' complaint and remand for further proceedings consistent with this opinion.

Reversed and remanded.

STEIGMANN, P.J., and GARMAN, J., concur.