FOURTH DIVISION
FILED:  March 29, 2007

No. 1-05-4069

| | | |
|---|---|---|
| IN RE LIQUIDATION OF LEGION | ) | Appeal from the |
| INDEMNITY CORPORATION | ) | Circuit Court of |
| | ) | Cook County, Illinois. |
| | ) | |
| (GE Frankona Reinsuranc Company Ltd., and | ) | |
| ERC Frankona Reinsurance (III), Ltd., | ) | No. 02 CH 6695 |
| | ) | |
| _____Plaintiffs and Counterdefendants-Appellees,_ | ) | Honorable Patrick E. McGann, |
| | ) | Judge Presiding. |
| v. | ) | |
| | ) | |
| Legion Indemnity Company, in Liquidation | ) | |
| | ) | |
| Defendant and Counterplaintiff-Appellant). | ) | |

JUSTICE MURPHY delivered the opinion of the court:

This case is before us on appeal of the trial court's order of summary judgment in favor of

plaintiffs GE Frankona Reinsurance Company, Ltd., and ERC Frankona Reinsurance (III), Ltd.,

foreign insurance companies based in the United Kingdom known collectively as Eagle Star

(Eagle Star).  During the course of liquidation proceedings of defendant Legion Indemnity

Company (Legion Indemnity), an Illinois insurance company, Eagle Star sought declaratory

judgment from the trial court to declare its rights with respect to the calculation and reporting of

balances it was owed.  Based on a written agreement between Eagle Star and Legion Insurance

Company (Legion Insurance), a Pennsylvania insurance company, and Legion Indemnity

(collectively known, and referred to here, as Legion Companies) and the findings of the

Pennsylvania Commonwealth Court (Commonwealth Court) with respect to that agreement in *Koken v. Legion Insurance Co.*, 865 A.2d 945 (Pa. 2004), the trial court granted Eagle Star's motion for summary judgment. For the reasons that follow, we affirm the trial court's summary judgment order.

## I. BACKGROUND

In 1998 and 1999, until Legion Companies cancelled the program, the parties were involved in an international property insurance program managed by Global Managers, Inc. (GMI Program). Under the GMI Program, Eagle Star was the lead underwriter under the quota share reinsurance program. Eagle Star and other reinsurance companies provided reinsurance for Legion Indemnity and Legion Insurance policies that would then be written as part of the GMI Program. Legion Indemnity and Legion Insurance utilized net accounting to report a single cession statement to Eagle Star as Legion Companies. The cession statements to Eagle Star accounted for monies due Eagle Star for its share of premiums as well as monies due Legion Companies for loss claims.

On February 21, 2002, the parties entered into an agreement in an attempt to resolve a dispute over what monies were owed between the companies under the GMI Program. The parties, Legion Indemnity and Legion Insurance, collectively as "Legion" throughout the agreement, and Eagle Star outlined their respective responsibilities under the GMI Program and how each would carry these out. Gregg Frederick signed this agreement on behalf of both Legion entities as "Sr. V.P. Contract Compliance."

On March 19, 2002, Legion Insurance sent "Revised Eagle Star Cession Statements" to Eagle Star. The statements covered the entire program years of 1998 and 1999. The statements

identified a balance due "Legion" for 1998 and a balance due Eagle Star for 1999. The final statement sheet combined the two years and identified a net balance due Eagle Star from "Legion" of $2,227,661 as of March 18, 2002.

On March 28, 2002, Legion Insurance was placed in rehabilitation by the Commonwealth Court. Within the rehabilitation order, the Commonwealth Court entered an antisuit injunction provision, prohibiting the filing of any cause of action against Legion Insurance. On April 3, 2002, the Illinois trial court entered an order of conservation against Legion Indemnity and placed the company under the control of the Director of Insurance. The Illinois court also included an antisuit injunction provision in its order, prohibiting any party with knowledge of the order from filing suit against Legion Indemnity.

On August 16, 2002, in a letter on "Legion Insurance Company" letterhead, Legion Companies sent new cession statements to Eagle Star. In addition to the combined final statement sheet noted above, cession statements for the years 1998 and 1999 were provided for both Legion Indemnity and Legion Insurance. These new statements indicated that Eagle Star owed Legion Indemnity $12,235,767, while Legion Insurance owed Eagle Star $14,513,429. The cover letter also included the address and bank accounts where funds due should be sent.

On October 4, 2002, Eagle Star filed a complaint for declaratory relief in the United States District Court for the Eastern District of Pennsylvania. Eagle Star sought a resolution of the billing dispute issue with Legion Companies; however, the federal district court entered an order on March 18, 2003, staying the federal action until such time as Eagle Star could receive permission from the Illinois and Pennsylvania tribunals to pursue the issue in that venue.

On April 9, 2003, following a trial, the Illinois trial court found Legion Indemnity

insolvent and removed the company from conservation and entered an order of liquidation. Subsequently, on July 25, 2003, the Commonwealth Court placed Legion Insurance into liquidation. Also, at this time, the Commonwealth Court granted Eagle Star permission to pursue federal litigation despite the anti-suit injunction against the parties.

Eagle Star next petitioned the Illinois trial court for permission to pursue its federal action on August 22, 2003. On November, 7, 2003, the trial court denied Eagle Star's request. Citing the jurisdiction granted by the Illinois Insurance Code, the importance to Illinois of having its own courts settle insurance liquidation disputes, and a notice of consent from the Pennsylvania liquidator to the trial court's jurisdiction to resolve the issue, the trial court ruled that it had subject matter jurisdiction over the billing dispute and jurisdiction over all parties.

On December 12, 2003, in the Commonwealth Court, Eagle Star sought revocation of the Legion Insurance liquidator's consent. In response, on January 22, 2004, the Commonwealth Court ordered the Legion Insurance liquidator to prepare a "508 Report," in accordance with Section 508 of the Pennsylvania Insurance Code (40 Pa. Cons. Stat. Ann. §221.8 (West 1999)). The Commonwealth Court's order required the following for the 508 Report:

> "This report shall address the following items: the [Legion Insurance] accounting for the GMI program from inception to the present; how this accounting for the GMI program changed as a result of this Court's Rehabilitation Order of March 28, 2002; how this afore-referenced accounting change, if any, benefits [Legion Insurance], its creditors and policyholders; the reasons for the revisions to [Legion Insurance]'s March 19, 2002 cession statement as reflected [i]n Legion's August 12, 2002 cession statement; how the revisions made by the

Insurance Commissioner to the afore-referenced cession statement benefit [Legion Insurance], its policyholders and creditors; the actuarial projections for future GMI program claims to be submitted by [Legion Insurance] and Legion Indemnity Company to Eagle Star; what offset provisions are contained in the applicable reinsurance agreements; whether the insolvency of either [Legion Insurance] or Legion Indemnity Company is addressed in any applicable offset provisions; how the intercompany receivables between [Legion Insurance] and its affiliates were affected by this Court's Rehabilitation Order of March 28, 2002; the intercompany receivables as of March 1, 2002 and January 1, 2004; and any other factual matters relevant and material to these above-listed items." (Emphasis omitted.) *Koken*, 865 A.2d at 949.

Eagle Star filed a motion to reconsider the Illinois trial court's order of November 7, 2003, and a hearing was held on January 28, 2004. Eagle Star argued again that the best venue for the dispute was the federal district court in Pennsylvania. It also informed the trial court of the request for the 508 Report and its belief that, from that request, the Commonwealth Court had concerns over the setoff dispute. Again citing the importance to Illinois of resolving insurance liquidation matters in its own courts, the trial court noted there was concurrent jurisdiction over the matter and denied Eagle Star's motion.

On February 23, 2004, the 508 Report was filed with the Commonwealth Court. That court scheduled a hearing on the propriety of the Legion Insurance liquidator's consent to proceed in Illinois and the August 16, 2002, cession statement. Notice of the hearing and a request to procure documents were sent to Legion Indemnity's receiver over Legion Insurance's

motion to quash. Despite this, Legion Indemnity did not appear at the June 29, 2004, hearing in the Commonwealth Court.

At the hearing before the Commonwealth Court, the sole witness to testify was Gregg Frederick, senior vice president, reinsurance for Legion Insurance. Frederick, a former senior vice president of Legion Indemnity, signed the aforementioned February 21, 2002, agreement on behalf of Legion Indemnity and Legion Insurance. In addition, as noted by the trial court, Frederick signed discovery submissions on behalf of Legion Indemnity in that court. Following the hearing, posthearing documents were submitted by both Eagle Star and Legion Insurance, all of which were served on Legion Indemnity.

On December 9, 2004, the Commonwealth Court issued its decision in *Koken*. This extensive opinion and order concluded that during the course of dealing between the parties, Legion Insurance and Legion Indemnity acted as a single entity and all obligations under the GMI Program were fixed prereceivership. *Koken*, 865 A.2d at 955-58. Because of this mutuality of capacity and time, the Commonwealth Court found the net balance accounting as completed in the March 18, 2002, cession statements was the appropriate means for determining the obligations of the parties. Accordingly, the August cession statements were found to be improper. *Koken*, 865 A.2d at 959. Furthermore, the consent of the Legion Insurance liquidator to allow the Illinois court to determine Eagle Star's declaratory action was deemed invalid as a zero sum gain for Legion Insurance and unhelpful in marshaling assets for Legion Insurance. *Koken*, 865 A.2d at 959.

As a result of the *Koken* decision, Eagle Star filed a motion for summary judgment with the trial court. On November 14, 2005, the trial court granted Eagle Star's motion in the 14-page

order at issue here. Specifically, the trial court found that *Koken* was a final judgment on the merits; that there was an identity of cause of action between *Koken* and Eagle Star's complaint for declaratory relief; and that the interests of Legion Indemnity and Legion Insurance were aligned as a result of their representation as one entity in the February 21, 2002, agreement and were in privity. Therefore, the trial court applied the doctrine of *res judicata*, holding that *Koken* precluded relitigation of the issue of obligations of the parties with respect to the March and August cession statements. The liquidator for Legion Indemnity now appeals that finding.

## II. ANALYSIS

The sole issue on appeal is whether the trial court properly granted summary judgment for Eagle Star. We review an order granting summary judgment *de novo*. *Big Sky Excavating, Inc. v. Illinois Bell Telephone Co.*, 217 Ill. 2d 221, 234 (2005). Legion Indemnity first argues that the trial court improperly found Legion Indemnity and Legion Insurance were in privity. Second, it argues that the trial court's resulting application of *res judicata* was fundamentally unfair. These arguments flow from each other and are best addressed together.

The equitable doctrine of *res judicata* mandates that a final judgment on the merits entered by a court with proper jurisdiction is an absolute bar to future claims between the parties regarding the same claim, demand, or cause of action. *Stillo v. State Retirement Systems*, 366 Ill. App. 3d 660, 663 (2006). The full faith and credit clause of the United States Constitution extends this to judgments entered in foreign states. U.S. Const., art. IV, §1. Therefore, if a court in a foreign state has jurisdiction over the parties and subject matter and renders a decision on the merits, it is conclusive upon the merits in another state. *Underwriters National Assurance Co. v. North Carolina Life & Accident & Health Insurance Guaranty Ass'n*, 455 U.S. 691, 704-05, 71

L. Ed. 2d 558, 570-71, 102 S. Ct. 1357, 1365-66 (1982).

The doctrine of *res judicata* is based on the public policy interests of judicial economy and finality of litigation. *Papers Unlimited v. Park*, 253 Ill. App. 3d 150, 153 (1993). The goal is to avoid allowing parties to "have their cake and eat it too" by engaging in litigation but ultimately arguing that they were not a party or privy and not bound by an unfavorable judgment. *Yorulmazoglu v. Lake Forest Hospital*, 359 Ill. App. 3d 554, 560 n.3 (2005). Parties to litigation are entitled to assume that opponents and those in privity are properly represented in a manner that the matter at issue will be resolved. *Yorulmazoglu*, 359 Ill. App. 3d at 560, citing Restatement (Second) of Judgments § 42, Comment *a* (1982). The key question is whether the party justifiably relied upon the ruling as binding. *Diversified Financial Systems, Inc. v. Boyd*, 286 Ill. App. 3d 911, 916 (1997).

As stated by the trial court, the essential elements of the equitable doctrine of *res judicata* are: (1) a final judgment on the merits rendered by a court of competent jurisdiction; (2) an identity of cause of action; and (3) an identity of parties or their privies. *Yorulmazoglu*, 359 Ill. App. 3d at 558. Legion Indemnity only disputes whether the third element, the privity of Legion Indemnity and Legion Insurance, was met. Legion Indemnity also argues that the trial court's application of *res judicata* was fundamentally unfair in that it did not present its case before the Commonwealth Court and that Eagle Star did not rely upon the proceedings before the Commonwealth Court.

Legion Indemnity first contends that its interests, or more importantly those of its liquidator, were not aligned with those of Legion Insurance at the time of the *Koken* order and opinion. Furthermore, it argues that the trial court improperly placed weight on the fact that it

did not intervene in the matter before the Commonwealth Court, despite the fact it received notice of the proceedings and Eagle Star's and Legion Insurance's posttrial filings. Legion Indemnity continues that the trial court's decision was fundamentally unfair. Although it received notice of proceedings before the Commonwealth Court, it notes that it was not a party to the action in that court, it was not joined, nor did it receive a summons to appear. Therefore, Legion Indemnity argues that it had no duty to appear and the trial court's finding of *res judicata* without it presenting its arguments is fundamentally unfair. Furthermore, it contends that the trial court erroneously determined that Eagle Star relied on the proceedings before the Commonwealth Court.

Legion Indemnity relies heavily upon the finding in *Yorulmazoglu* in support of its argument. In *Yorulmazoglu*, the plaintiff joined the arbitration claim of two fellow physicians with the same attorney against the defendant hospital; however, the plaintiff did not join in a concurrent action filed by his co-claimants in the circuit court of Lake County. *Yorulmazoglu*, 359 Ill. App. 3d at 556. The arbitrator found for both plaintiffs and the defendant but awarded attorney fees to the defendant based on the fact the defendant was the prevailing party on most of the claims. The plaintiff then timely filed a petition to vacate the attorney fee award in the circuit court of Cook County, while his co-claimants filed a motion to confirm the arbitration award in the Lake County action, which was granted. The trial court in the Cook County action subsequently granted the defendant's motion to dismiss, finding that the Lake County order collaterally estopped the plaintiff from seeking to vacate the award in Cook County. *Yorulmazoglu*, 359 Ill. App. 3d at 557-58.

Although this court affirmed the dismissal of the plaintiff's complaint, it did so only after

finding that the complaint should not have been dismissed under the doctrine of *res judicata*. *Yorulmazoglu*, 359 Ill. App. 3d at 563-66. The court stated that a party to an action is not necessarily always in privity with other parties to that action and that the relevant time for determining whether privity existed in that case was when the order was entered in Lake County. The court concluded that because the plaintiff had filed his separate petition to vacate the arbitration award, his interests had diverged from his co-claimants and he was not adequately represented in the Lake County proceedings. The court continued that judicial economy argued that the plaintiff should have been joined or added as a necessary party in the Lake County action; however, despite the defendant's knowledge of the Cook County action, it chose not to follow that course. *Yorulmazoglu*, 359 Ill. App. 3d at 559-60. Because the doctrine of *res judicata* should "only be applied as fairness and justice require," and the plaintiff was not afforded an opportunity to present his position in Lake County, the *Yorulmazoglu* court concluded that fairness and justice required not applying *res judicata* or collateral estoppel. *Yorulmazoglu*, 359 Ill. App. 3d at 563.

Legion Indemnity argues that *Yorulmazoglu* requires this court to reverse the findings of the trial court. It summarily states that the cases cited by the trial court in support of its privity finding are inapposite and involved "radically different facts." See *Holzer v. Motorola Lighting*, 295 Ill. App. 3d 963 (1998); *Catalano v. Aetna Casualty & Surety Co. of Illinois*, 105 Ill. App. 3d 195 (1982). Legion Indemnity concludes that *Yorulmazoglu* is directly on point and mandates a determination of the parties' relationship at the time of the court's order, not prereceivership.

Further, Legion Indemnity argues that the trial court improperly found that Eagle Star relied on the order of the Commonwealth Court, the key consideration under the doctrine of *res*

*judicata. Diversified Financial Systems, Inc.*, 286 Ill. App. 3d at 916. Legion Indemnity claims that the trial court misplaced Eagle Star's reliance on the February 21, 2002, agreement and representations of Legion Companies as reliance on the court's order required for the application of *res judicata*. Legion Indemnity notes that Eagle Star did not dismiss its complaint before the trial court, but maintained three separate actions, while failing to inform the trial court that the Commonwealth Court was considering the setoff dispute.

Eagle Star counters that the trial court properly followed applicable law in finding that the doctrine of *res judicata* required granting its motion for summary judgment on its complaint for declaratory action. Eagle Star argues that Legion Indemnity has missed or misstated several important facts in its argument. It also offers that it informed the trial court and Legion Indemnity of the proceedings before the Commonwealth Court. Also, as stated in the court's order highlighted above, the 508 Report and proceedings clearly involved explanations of the parties' relationships and obligations and the setoff dispute at hand. Eagle Star also notes that it sought a stay of the proceedings in the trial court while the Commonwealth Court proceedings were ongoing, but was denied by the trial court.

Finally, stressing the equitable nature of the doctrine of *res judicata*, Eagle Star argues that allowing Legion Indemnity's definition of privity and its amended setoff figures to stand would not be fair. Eagle Star argues that the August 16, 2002, cession statement was "post-receivership shenanigans" that would unlawfully create a boon for Legion Indemnity and a burden for Eagle Star. Citing the Illinois Insurance Code and established precedent, Eagle Star maintains the trial court properly granted full faith and credit to the ruling of the Commonwealth Court. Therefore, Eagle Star contends that the trial court properly upheld the *Koken* finding and

applied *res judicata* in granting summary judgment. Eagle Star argues further that despite Legion Indemnity's argument, *Yorulmazoglu* supports the application of *res judicata* as fair and just. Otherwise, Eagle Star asserts, it would have been unfair to force it to relitigate the same issue and face the possibility of conflicting orders.

The determination of the privity of parties to litigation is determined on a case-by-case basis. In this case, the trial court highlighted that a nonparty may be bound to a judgment in a case under privity if its interests are so closely related or intertwined to those of a party that the party is a virtual representative of the nonparty. *Yorulmazoglu*, 359 Ill. App. 3d at 559. Citing ancient case law and the Illinois Insurance Code, the trial court properly and succinctly stated the law with respect to the role of a receiver in an insurance liquidation.

The trial court noted that an appointed receiver is charged with representing the corporate body of the insurance company to be liquidated. Specifically, the receiver does not represent the creditors or shareholders of the company, though he may litigate for the benefit of the creditors and shareholders as the corporate entity might. *Fairbanks v. Farwell*, 141 Ill. 354, 364 (1892). This concept was subsequently codified under the Illinois Insurance Code and affirmed by this court and our supreme court. See 215 ILCS 5/193 (West 2004); *In re Rehabilitation of Centaur Insurance Co.*, 238 Ill. App. 3d 292, 298-99 (1992), aff'd, 158 Ill. 2d 166, 171-72 (1994).

The trial court concluded that the key to this case is the February 21, 2002, agreement between the parties. With this agreement, the parties attempted to resolve the remaining financial issues from the GMI program. As Eagle Star correctly notes, despite Legion Indemnity's contention, the order of the Commonwealth Court requesting the 508 Report and the proceedings before that court, including the testimony of Frederick, indicate a design to

determine the obligations of the parties and, particularly, the setoff dispute. The trial court was clearly aware of the proceedings before the Commonwealth Court and noted the concurrent jurisdiction of the two courts.

The trial court found that the Commonwealth Court properly determined that both Legion companies had identical rights and obligations under the February 21, 2002, agreement. The trial court also found that their interests were aligned as a result of this contract and their representations such that they were essentially a single entity, Legion Companies. Contrary to Legion Indemnity's assertion, *Catalano* is not inapposite to this case. Although it involved the claims of a husband and wife, the trial court cited to *Catalano* because the husband was in privity with his wife as his claim was based on the same contractual rights upon which his wife's claim was based. *Catalano*, 105 Ill. App. 3d at 197. And though *Holzer* involved an explicit grant to the control of the defense of a lawsuit, the fact remains that it still stands for the proposition cited to by the trial court, namely, that contractual provisions alone may establish privity. *Holzer*, 295 Ill. App. 3d at 974.

As cited by the trial court, under *Yorulmazoglu*, Legion Indemnity and Legion Insurance were in privity based on the contract. The interests of the two companies were closely aligned based on the February 21, 2002, agreement and use of net accounting to establish privity. The facts of this case are distinguishable from *Yorulmazoglu* with respect to the date to determine the relationship of the parties. The issue at hand involves obligations established prereceivership. While the resolution in this case may not be beneficial to Legion Indemnity and its creditors, the fact remains that Eagle Star's complaint for declaratory relief and the *Koken* decision involve the same contractual interest of the parties pursuant to the February 21, 2002, agreement. Therefore,

this case is unlike *Yorulmazoglu*, where a separate plaintiff had separate and distinct legal interests and there was an intervening act creating a diversion of interests. Here, there is an alignment of interest based on the contract between the parties and that contract was not modified at any point, certainly not prior to the companies being put in receivership.

With respect to the key consideration under *Diversified Financial Systems*, reliance on the judgment, Legion Indemnity is correct that the trial court misapplied Eagle Star's reliance on its dealings and contracts with Legion Companies in the course of its business for the reliance on the judgment. This misapplication is not fatal. Eagle Star's reliance is further evidence of the relationship between the parties and support for the finding of privity. In addition, because Legion Indemnity had such an alignment of interests with Legion Insurance to be considered a single entity for purposes of the setoff dispute, the trial court found that Legion Indemnity's decision not to intervene in the proceedings was informative of its reliance on the judgment.

Furthermore, contrary to Legion Indemnity's assertion that it was "blindsided" by the *Koken* decision, Eagle Star did inform it and the trial court of the proceedings in the Commonwealth Court and the subject matter to be considered by that court. The trial court found there was concurrent jurisdiction, and Eagle Star maintained actions in each state to protect its interests. This does not foreclose any reliance on the Commonwealth Court's order.

At oral argument, Legion Indemnity presented this court's recent holding in *IFC Credit Corp. v. Magnetic Tech, Ltd.*, 368 Ill. App. 3d 898 (2006), to argue that, in any event, it cannot be penalized for not intervening in the matter. *IFC Credit* is distinguishable from this case. In *IFC Credit*, the plaintiff had been assigned contract rights to a contract with the defendant; however, following the assignment, the assignor faced consumer fraud charges brought by the

federal trade commission and Illinois Attorney General. These charges resulted in a default judgment against the assignor that found all of its contracts unenforceable. The trial court found that the plaintiff's failure to intervene in consumer fraud action fatal and dismissed its case based on *res judicata*. *IFC Credit*, 368 Ill. App. 3d at 899-900.

This court reversed the dismissal, finding that the right to intervene in an action does not subject a party to the risk of being bound by the result of the litigation. Essential to this court's holding was the fact the assignment occurred prior to the commencement of the suit and there was no privity between the assignor and the plaintiff. *IFC Credit*, 368 Ill. App. 3d at 901. Therefore, although the plaintiff was aware of the proceedings, it was not in privity with the assignor and could not be punished for failing to intervene.

In this case, as noted above, privity was clearly established between Legion Indemnity and Legion Insurance. The February 21, 2002, contract was executed before either company went into rehabilitation. The August statements that Legion Indemnity now asserts must be followed were issued after both Legion Indemnity and Legion Insurance had been placed into rehabilitation. Additional facts support the trial court's finding that the two companies continued to represent themselves as a single entity and the application of *res judicata* was proper. Frederick signed the February 21, 2002, contract on behalf of both companies as Legion Companies, Frederick later was authorized by Legion Indemnity and Legion Insurance to sign discovery filings, and he testified to the interconnected relationship of the two companies.

The trial court therefore had the support to conclude that Legion Indemnity's interests with respect to the obligations of the February 21, 2002, contract were so aligned with Legion Insurance that it was adequately represented and it did not need to be joined. See *Holzer*, 295 Ill.

App. 3d at 973.  Legion Indemnity was not punished for failing to intervene; unlike the plaintiff in *IFC Credit*, it did not involve a singular contract assignment before trial, but maintained a relationship with Legion Insurance before and after the relevant proceedings were initiated and was in privity.  Eagle Star clearly relied on its contract and dealings to treat Legion Companies as a unified entity and also relied on the order of the Commonwealth Court finding the same.  Therefore, the trial court's decision was not fundamentally unfair and properly granted the decision of the Commonwealth Court full faith and credit.

III.  CONCLUSION

Accordingly, for the aforementioned reasons, the decision of the trial court is affirmed.

Affirmed.

QUINN, P.J., and NEVILLE, J., concurring.