*In re* MARRIAGE OF SHARON ANN MESECHER, n/k/a Sharon Ann Schmitt, Petitioner-Appellee, and BARRY LEE MESECHER, Respondent-Appellant.

Fourth District No. 4—94—0439

Opinion filed May 16, 1995.

Robert Weiner, of Springfield, for appellant.

Mark Rabin, of Long, Morris, Myers, Rabin, Shuff & Taylor, P.C., of Springfield, for appellee.

JUSTICE COOK delivered the opinion of the court:

Respondent Barry Lee Mesecher appeals an April 26, 1994, order of the circuit court of Sangamon County requiring him to pay $27,366.19 in unpaid child support and insurance costs to petitioner Sharon Ann Mesecher, n/k/a Sharon Ann Schmitt. Respondent contends that petitioner's present action for unpaid support is barred under the doctrine of *res judicata,* because petitioner seeks arrearages that accrued prior to an October 22, 1991, court order which had determined the amount of child support arrearages then due. Respondent further contends that the April 26, 1994, order is void because petitioner failed to notify or join the Illinois Department of Public Aid (IDPA) as a necessary party to her present action. We reject both arguments and affirm the trial court's order.

## I. BACKGROUND

The parties were married on October 16, 1978. Two children were born to the parties: Michelle Lynn, born August 9, 1978, and Melissa Sue, born February 26, 1980. On January 22, 1981, a judgment of dissolution of marriage was entered. Respondent was ordered to pay $235 per month in child support and to maintain health and hospitalization insurance for the minor children.

Respondent did not meet his obligations, and petitioner approached the IDPA for help with collection proceedings. The IDPA

did not initiate any collection proceedings at that time. Petitioner then applied for public aid, apparently sometime in 1986. By virtue of accepting public aid, petitioner assigned to the IDPA her rights to child support, up to the amount of financial aid provided by the IDPA. 305 ILCS 5/10—1 (West 1992).

After petitioner began receiving public aid, the IDPA initiated collection proceedings against respondent. On November 24, 1986, the trial court found that the IDPA had provided $2,324 for respondent's children and entered a judgment against respondent and in favor of the IDPA for that amount. Respondent was ordered to pay child support of $40 per week, plus $4 per week on the judgment. The order did not indicate how the arrearage was calculated. The order stated that "[t]he question of health/hospitalization insurance is reserved."

Respondent did not make payments on the $2,324 arrearage, and on June 1, 1987, the State's Attorney filed a petition for rule to show cause why respondent should not be held in contempt. On July 21, 1987, the trial court found respondent owed "$3,168 in back child support as of July 13, 1987." The order did not make clear whether judgment was in favor of the IDPA or petitioner, but respondent's $10-per-week payments on the arrearage were to be forwarded by the clerk of the circuit court to the IDPA until the IDPA notified the clerk that petitioner was no longer receiving public aid. The IDPA filed such notice in April 1989.

Again respondent did not pay. The IDPA, through the office of the State's Attorney, filed a petition alleging respondent was in arrears $3,133 as of August 16, 1990. The trial court found that respondent was in arrears $4,715 "as of May 6, 1991," and awarded judgment in favor of "the petitioning parties" in that amount. An order dated October 22, 1991, clarified that of this $4,715, $2,649 was owed to petitioner and $2,066 was owed to the IDPA.

On November 10, 1993, petitioner filed a petition seeking $17,773.50 in unpaid support allegedly accruing prior to the November 24, 1986, judgment for IDPA. Petitioner also sought reimbursement for $9,592.69 she had spent maintaining medical insurance for the benefit of the parties' children. At the hearing on this petition, respondent did not contest petitioner's figures, but he maintained that the October 1991 order barred further litigation on arrearages owed prior to that date. Petitioner then testified that she came to court the day the October 1991 order was entered in response to a letter from the IDPA. The State's Attorney was representing the IDPA in several arrearage cases that day, and the hearing on petitioner's case lasted only about 15 minutes. Petitioner was not represented by

counsel at that time, and she believed that the State's Attorney was representing the IDPA alone. Petitioner signed the October 1991 order after the State's Attorney explained that it covered only arrearages accruing after petitioner began receiving public aid.

Respondent presented no evidence concerning the subject matter of prior proceedings. The trial court concluded that the October order did not preclude the present action for arrearages accruing prior to November 24, 1986, and accordingly it entered judgment in favor of petitioner for $27,366.19.

## II. WAS PETITIONER'S PRESENT ACTION BARRED UNDER THE DOCTRINE OF *RES JUDICATA*?

■ The supreme court recently set forth the standards for deciding whether *res judicata* applies to bar a claim:

> "Under the doctrine of *res judicata*, a final judgment rendered on the merits by a court of competent jurisdiction is conclusive as to the rights of the parties and their privies and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand, or cause of action. (*People v. Kidd* (1947), 398 Ill. 405, 408[, 75 N.E.2d 851, 853].) Where there is identity of parties, subject matter, and cause of action, the doctrine of *res judicata* extends not only to every matter that was actually determined in the prior suit but to every other matter that might have been raised and determined in it. (*Boddiker v. McPartlin* (1942), 379 Ill. 567, 577[, 41 N.E.2d 756, 761].)" *Torcasso v. Standard Outdoor Sales, Inc.* (1993), 157 Ill. 2d 484, 490, 626 N.E.2d 225, 228.

What is involved in this case is estoppel by judgment (claim preclusion) and not collateral estoppel (issue preclusion). If petitioner had obtained the October 1991 order, we would agree that she could not obtain a subsequent order for arrearages accruing before 1986, because there was only one cause of action for unpaid child support. If petitioner had obtained the October 1991 order, that order would bar a subsequent action not only for matters actually determined in that suit, but matters which could have been raised and determined, including arrearages prior to 1986. Petitioner, however, contends her present action is not barred by *res judicata*, because there is no privity between herself and the IDPA. We agree.

■ *Res judicata* will not operate to preclude a subsequent suit unless there is an identity of parties or privity. (*People ex rel. Burris v. Progressive Land Developers, Inc.* (1992), 151 Ill. 2d 285, 296, 602 N.E.2d 820, 825.) Privity exists "between ' "parties who adequately represent the same legal interests." ' " (*Progressive Land Developers, Inc.*, 151 Ill. 2d at 296, 602 N.E.2d at 825, quoting *Hartke v. Chicago Board of Election Commissioners* (N.D. Ill. 1986), 651 F. Supp. 86, 90.)

"It is the identity of interest that controls in determining privity, not the nominal identity of the parties [citation]." *Progressive Land Developers, Inc.*, 151 Ill. 2d at 296, 602 N.E.2d at 826.

■ Here, petitioner testified that although she appeared as a witness at prior collection proceedings, those proceedings were initiated by the IDPA, through the office of the State's Attorney. The issue is therefore whether the IDPA adequately represented petitioner's interests in these prior proceedings. We hold that it did not. The separate parties claim separate monies. Petitioner presented uncontroverted testimony that the IDPA sought only to recoup the public aid monies it had expended; the IDPA was unconcerned with arrearages accruing prior to petitioner's receipt of public aid. Since the IDPA was not interested in the recovery of all monies due, it was not an adequate advocate for petitioner's interests.

We find the case of *Department of Public Aid ex rel. Stark v. Wheeler* (1993), 248 Ill. App. 3d 749, 618 N.E.2d 1311, to be instructive. There, the IDPA brought suit to decide the paternity of twins and the liability of the alleged father for support. Prior to the action initiated by the IDPA, the twins' mother had filed a paternity suit against the same alleged father. The mother's suit had been dismissed with prejudice, which operated as an adjudication on the merits. (*Wheeler*, 248 Ill. App. 3d at 750-51, 618 N.E.2d at 1313.) The court held that the IDPA's claim was not barred by *res judicata*, because the IDPA was not in privity with the mother. (*Wheeler*, 248 Ill. App. 3d at 751, 618 N.E.2d at 1313-14.) The court explained the interests of public agencies providing aid to children are different from the interests of the children's caretakers. *Wheeler*, 248 Ill. App. 3d at 751, 618 N.E.2d at 1314.

In *Wheeler*, it is difficult to see exactly how the interests of the mother and the IDPA diverged, because both parties would have benefited from a judgment of paternity. Here it is clear that the IDPA and petitioner's interests are distinct, because the IDPA would have gained nothing by establishing respondent had debts other than those owed the IDPA.

Respondent cites *Draper v. Truitt* (1993), 250 Ill. App. 3d 654, 621 N.E.2d 202, and *In re Connors* (1994), 255 Ill. App. 3d 781, 627 N.E.2d 1171, in support of the proposition that petitioner and the IDPA were privies. In *Draper*, the mother brought a paternity and support action on behalf of her minor daughter after the mother had herself lost a paternity action against the same alleged father. The court held that the minor's interests had been adequately represented by the mother in the earlier paternity action, because the mother fully litigated the issue of paternity. (*Draper*, 250 Ill. App. 3d at 659, 621 N.E.2d at 206.)

We question the soundness of *Draper*, which seems to abandon the requirement of privity in cases where the issues are fully litigated. In some paternity cases (even fully litigated ones) there may be a difference between the mother's interests and the child's interests, as illustrated by the fact that under section 8 of the Illinois Parentage Act of 1984 a child may bring the action not later than two years after the child reaches the age of majority, while the mother's action must be brought not later than two years after the birth of the child. (750 ILCS 45/8(a)(1), (a)(2) (West 1992); see *Simcox v. Simcox* (1989), 131 Ill. 2d 491, 546 N.E.2d 609 (prior action an uncontested dissolution proceeding); *In re Marriage of Ingram* (1988), 176 Ill. App. 3d 413, 418, 531 N.E.2d 97, 100 (mother sought "to deprive the child of the only father he has known").) Even applying *Draper*, the IDPA here did not fully litigate the issue of arrearages accruing prior to petitioner's receipt of public aid.

In *Connors*, the State attempted to subject respondent to involuntary commitment. After failing to commit respondent, the State tried again by finding a new person to sign the petition. The court found that despite the different names on the petitions, the State was the real party in both proceedings. (*Connors*, 255 Ill. App. 3d at 783, 627 N.E.2d at 1172-73.) There is no suggestion in the record that petitioner is attempting such a ruse.

Since the IDPA and petitioner were not privies, respondent's defense of *res judicata* must fail. We recognize that the presence of the IDPA in child support proceedings creates problems for payors of child support by adding another party to deal with and creating the possibility that the payor may be forced to litigate similar issues more than once. Nevertheless, we are unwilling to force a recipient of child support to give up a legitimate claim which that party has not in fact litigated. Perhaps the solution for child support payors is to make sure that both the recipient and the IDPA are parties in each proceeding.

### III. WAS THE TRIAL COURT'S ORDER VOID BECAUSE THE IDPA WAS NOT JOINED AS A NECESSARY PARTY?

■ On appeal, respondent argues that the trial court's order is void, because the IDPA was not joined as a party to the present action. Respondent cites *In re Marriage of Clark* (1988), 170 Ill. App. 3d 690, 525 N.E.2d 149, and *In re Marriage of Johnson* (1981), 97 Ill. App. 3d 634, 423 N.E.2d 264, in support of the proposition that the IDPA became a necessary party to any arrearage action brought by petitioner, by virtue of petitioner's assignment to the IDPA of her right to receive child support payments. In both *Clark* and *Johnson*,

mothers currently receiving public aid petitioned for back child support without notifying the IDPA. In both cases the trial courts granted the petitions, but the appellate courts reversed, because the IDPA, as an assignee of the mother's support rights, was entitled to notice when its interests were at stake. The *Johnson* court explained: "Whenever a party has been omitted whose presence is so indispensable to a decision upon the merits that an order cannot be made without materially affecting his interests, the court should not proceed to a decision on the merits." *Johnson*, 97 Ill. App. 3d at 636, 423 N.E.2d at 265.

The present case is distinguishable. Unlike the mothers in *Johnson* and *Clark*, petitioner seeks arrearages that accrued before she received public aid. Furthermore, the present judgment against respondent in no way compromises the interests of the IDPA. Respondent was not relieved of any indebtedness due the IDPA. Since the present order did not materially affect the interests of the IDPA, we hold that the IDPA was not a necessary party.

## IV. CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court of Sangamon County.

Affirmed.

GREEN and STEIGMANN, JJ., concur.