**VIRGINIA SURETY COMPANY, an Illinois corporation, Plaintiff–Appellant,**

v.

**NORTHROP GRUMMAN CORPORATION, a Delaware corporation, Defendant–Appellee.**

No. 96–56804.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 4, 1998.

Decided May 27, 1998.

Jack I. Samet and Angela C. Agrusa, Baker & Hostetler, Los Angeles, California; Shand S. Stephens, San Francisco, California, for plaintiff-appellant.

Mark Riera, Sheppard, Mullin, Richter & Hampton, Los Angeles, California, for defendant–appellee.

Before: FLETCHER, MAGILL,* and T.G. NELSON, Circuit Judges.

MAGILL, Senior Circuit Judge:

Virginia Surety Company (Virginia Surety), an Illinois corporation, brought this suit for declaratory and injunctive relief against Northrop Grumman Corporation (Northrop Grumman), a Delaware corporation with its principal place of business in California, alleging diversity jurisdiction. Virginia Surety's suit sought a declaration of rights under an insurance underwriting contract between Anchor Underwriting Managers, Limited (Anchor), a Bermuda corporation, and Paumanock Insurance Company, Limited (Paumanock), also a Bermuda corporation. The district court dismissed the suit, holding that Virginia Surety lacked standing and that an indispensable party had not been joined. Virginia Surety now appeals. While we conclude that Virginia Surety had standing to bring this suit, we hold that the district court properly dismissed the suit for Virginia Surety's failure to join an indispensable party. Accordingly, we affirm.

### I.

Anchor is a wholly-owned subsidiary of Virginia Surety. On August 21, 1989, Anchor entered into an Underwriting Management Agreement (UMA) with Paumanock to underwrite reinsurance policies in Bermuda. The UMA expressly stated that it was to be governed by the laws of Bermuda and provided that all services under it were to be performed in accordance with Bermuda law. While Virginia Surety was not specifically named in the UMA, the UMA provided that "Anchor and its *parent company* shall indemnify [Paumanock] and make [Pauma-

nock] whole for losses ... associated with any act of employee dishonesty, misappropriation of funds, embezzlement, fraudulent or criminal acts or omissions, etc. of any person at any time employed by Anchor or its *parent company* ...." UMA at Art. 7(b) (emphasis added), *reprinted in* Appellant's Excerpts of R. at 86.

At the time it entered into the UMA, Paumanock was a wholly-owned subsidiary of Grumman Aerospace Company (Grumman), a New York corporation. On March 22, 1993, Grumman sold Paumanock to Visor Investments Limited (Visor), a Bermuda corporation. *See* Share Purchase Agreement (SPA) at §§ 2.01–2.03, *reprinted in* Appellant's Excerpts of R. at 13. Pursuant to § 7.11 of the SPA, Grumman had the right to negotiate with Visor for an interest in legal claims brought by Paumanock against third parties.[1] In 1994, Grumman was acquired by Northrop Corporation, a Delaware corporation, and the two entities became Northrop Grumman. Northrop Grumman retained Grumman's right to negotiate with Visor for an interest in Paumanock's claims against third parties.

Paumanock accused Anchor of breaching Anchor's fiduciary duty under the UMA by "(1) trading lines of insurance to shift higher risks to Paumanock; (2) preferentially writing policies of reinsurance for other sureties; and (3) writing policies of professional liability insurance for Paumanock that were prohibited under the [UMA]." Def.'s Mem. in Support of Mot. to Dismiss Pl.'s Compl. at 5, *reprinted in* Appellant's Excerpts of R. at 61. Between 1994 and 1996, Paumanock and Northrop Grumman attempted to settle this dispute with Anchor. *See* Appellant's Ex-

---

* Honorable Frank J. Magill, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

1. Section 7.11 of the SPA, entitled "Possible Litigation on Behalf of Company," provides:

   The parties agree that in the event that, at some time after the Closing Date, it should appear that a claim or cause of action or a possible cause of action exists between [Paumanock] and any third party(s) arising out of any loss or damage suffered by [Paumanock] in relation to the insurance business carried on by it prior to the Effective Date as a result of the nonfeasance or malfeasance of any such third party(s), then the parties hereto shall

   consider whether it lies in their mutual best interests and in the best interest of [Paumanock] to pursue such claim or cause of action against such third party(s). If the parties so agree then [Visor] shall cause [Paumanock] to take such actions as may be necessary or desirable to pursue such claim or cause of action against such third party(s) and the costs of so doing and the proceeds, if any, resulting therefrom shall be allocated as among [Grumman], [Visor], and [Paumanock] in such manner as they shall agree in writing prior to the commencement by [Paumanock] of such actions. SPA at § 7.11, *reprinted in* Appellant's Excerpts of R. at 28–29.

cerpts of R. at 150–61. These efforts were unsuccessful, and Paumanock gave notice on August 30, 1996, that it intended to bring suit under the UMA. Pursuant to § 7.11 of the SPA, Northrop Grumman negotiated a twenty percent interest in Paumanock's suit against Anchor, which was filed in Bermuda court on November 5, 1996.

Paumanock subsequently amended its complaint to include Virginia Surety as a defendant. *See* Appellant's Req. to Take Judicial Notice at Tab A at 5. In its amended complaint, Paumanock alleged that Virginia Surety, along with Anchor, had breached the UMA. Paumanock noted that Article 7(b) of the UMA required Virginia Surety to indemnify certain losses suffered by Paumanock, *see id.* at 15, and Paumanock alleged that "Anchor acted as [Virginia Surety's] agent in entering into the covenant contained in and/or evidenced by Article 7(b) of the Management Agreement on its behalf." *Id.* at 16 (emphasis omitted). Alleging breaches of contract, breaches of fiduciary duty, breaches of the duty of care, and conspiracy, Paumanock sought damages of $14,047,955.[2]

On September 17, 1996, after Virginia Surety received notice that Paumanock intended to file suit in Bermuda court, Virginia Surety filed the instant suit in the United States District Court for the Central District of California for declaratory and injunctive relief against Northrop Grumman.[3] For relief, Virginia Surety requested the district court to

> declare the respective rights and duties of [Virginia Surety] and its affiliated companies with respect to any and all actions and conduct of Anchor in its capacity as Underwriting Manager for Paumanock . . . [and to issue] an order that [Northrop Grumman] and all of its related or subsidiary companies, be restrained from instituting,

participating in, financing or causing to be instituted any action against [Virginia Surety] arising out of or in any way connected with Anchor's activities as Underwriting Manager for Paumanock in Bermuda, or otherwise, except as a counterclaim in this action

Compl. at 7–8, *reprinted in* Appellant's Excerpts of R. at 7–8.

On September 30, 1996, the district court denied Virginia Surety's request for a preliminary injunction, and on November 13, 1996, the district court dismissed Virginia Surety's suit. The district court held that Virginia Surety, as a shareholder, lacked standing to pursue Anchor's claims. In the alternative, the district court held that dismissal was also proper because Virginia Surety had failed to join Paumanock as a necessary and indispensable party. In reaching its decision, the district court concluded that Virginia Surety's suit represented "forum shopping and a race to the courthouse." Tr. of Mot. Hr'g (Nov. 12, 1996) at 20. Virginia Surety now appeals the district court's dismissal of its suit.

## II.

This Court reviews the district court's determination of standing de novo. *See San Diego County Gun Rights Comm. v. Reno,* 98 F.3d 1121, 1124 (9th Cir.1996). "Standing is an essential, core component of the case or controversy requirement" of Article III. *Id.* at 1126. The burden in this case is on Virginia Surety, as the party seeking federal jurisdiction, to establish standing. *Id.* "[F]or purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all

---

**2.** Virginia Surety argued in the Bermuda court that it was not a party to the UMA, asserting that it "was not a direct party to the alleged indemnity" and that it "was not made a party by Anchor, who was not its agent for these purposes." *Paumanock Ins. Co. v. Anchor Underwriting Managers, Ltd. and Virginia Sur. Co.,* 1996 No. 455 Civ. Jur. at 3 (Nov. 14, 1997 Berm. S.Ct.) (court's description of Virginia Surety's arguments), *reprinted in* Appellee's Resp. to order to Show Cause (Jan. 16, 1998) at 10. The Bermuda court, however, allowed Paumanock's suit to

continue against both Anchor and Virginia Surety.

**3.** Contrary to its position in the Bermuda court, Virginia Surety contended before the district court that "[t]he original underwriting agreement was between Paumanock and Anchor and Virginia Surety," Tr. of Proceedings (Sept. 30, 1996) at 17, and that "the [UMA] is signed by Anchor . . . as an undisclosed agent of Virginia Surety." Tr. of Mot. Hr'g (Nov. 12, 1996) at 5.

material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Takhar v. Kessler,* 76 F.3d 995, 1000 (9th Cir.1996) (quotations omitted).

▮ The district court correctly held that Virginia Surety does not have standing to pursue this suit merely because Anchor is its subsidiary. *See EMI Ltd. v. Bennett,* 738 F.2d 994, 997 (9th Cir.1984) ("Generally, a shareholder does not have standing to redress an injury to the corporation in which it holds stock."); *see also Shell Petroleum, N.V. v. Graves,* 709 F.2d 593, 595 (9th Cir. 1983) ("To have standing to maintain an action, a shareholder must assert more than personal economic injury resulting from a wrong to the corporation. A shareholder must be injured directly and independently of the corporation." (citation omitted)). Virginia Surety, however, argues that its potential liability to Paumanock constitutes a direct and independent injury, and that Northrop Grumman's relationship to Paumanock gives Virginia Surety standing to pursue a suit against Northrop Grumman. We agree.

▮ To have standing, Virginia Surety must allege a concrete injury attributable to the defendant's actions that is remediable by the relief requested. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) "Where only injunctive or declaratory relief is sought, a plaintiff must show a very significant possibility of future harm in order to have standing to bring suit." *Coral Constr. Co. v. King County,* 941 F.2d 910, 929 (9th Cir.1991) (quotations omitted). Under the suit filed against it in Bermuda court, Virginia Surety faces over $14,000,000 in potential liability for its alleged breach of the UMA and its duty to indemnify Anchor. A potential judgment for $14,000,000 represents an imminent and concrete injury to Virginia Surety, thus satisfying the first element of standing. *See Lujan,* 504 U.S. at 560, 112 S.Ct. 2130 (to have standing, "the plaintiff must have suffered an injury in fact-an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical" (quotations, citations, and footnote omitted)).

We also believe that Virginia Surety has met the causation element of standing. *See id.* at 560, 112 S.Ct. 2130 ("[T]here must be a causal connection between the injury and the conduct complained of-the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." (quotations and alterations omitted)). Although Northrop Grumman was not a party to the UMA, and is not a plaintiff in Paumanock's suit against Virginia Surety, Northrop Grumman holds a twenty percent interest in Paumanock's potential recovery against Virginia Surety. In addition, Virginia Surety has alleged that Northrop Grumman is "controlling and financing" the Bermuda litigation. Tr. of Proceedings (Sept. 30, 1996) at 16. Accepting these allegations as true, we conclude that Virginia Surety's potential liability to Paumanock is "fairly traceable" to Northrop Grumman. *See Lujan,* 504 U.S. at 560, 112 S.Ct. 2130.

The third element of standing, whether it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision," *id.* at 561, 112 S.Ct. 2130 (quotations omitted), presents a closer question. Virginia Surety's injury is a potential $14,000,000 judgment against it from the Bermuda court. To obtain redress from this injury, Virginia Surety has sued (1) to enjoin Northrop Grumman from participating in the Bermuda suit, and (2) to obtain a declaration of Virginia Surety's rights and obligations under the UMA. Because Northrop Grumman is not a party to Paumanock's Bermuda suit, we fail to see how an injunction preventing Northrop Grumman's participation in the suit will prevent the Bermuda court from issuing a judgment against Virginia Surety. While Virginia Surety has alleged that Northrop Grumman is controlling and financing Paumanock's litigation, Paumanock has an independent interest in seeing the litigation to fruition. Because it seems unlikely that Paumanock would abandon its pursuit of a $14,000,000 judgment merely because Northrop Grumman was enjoined from participating in the suit, this remedy would not redress Virginia Surety's injury.

Virginia Surety's requested declaration of rights, however, could provide Virginia Sure-

ty with an adequate remedy. If Paumanock is ultimately successful in its suit and obtains a judgment against Virginia Surety from the Bermuda court, Paumanock will likely attempt to enforce the Bermuda judgment against Virginia Surety in a court in the United States. *See* Tr. of Mot. Hr'g at 13–14. Virginia Surety's strategic goal in bringing this suit against Northrop Grumman was to have a judgment against Northrop Grumman act as res judicata against any suit brought by Paumanock in the United States, thus defeating any such enforcement action by Paumanock. *See id.* at 8–9 (statement by counsel for Virginia Surety) ("The issue is, is there privity between [Northrop Grumman and Paumanock] for purposes of the matter at issue in this litigation sufficient so that res judicata would bind one if a judgment is entered against the other, and we think there is.").

■ Because Virginia Surety is incorporated under the laws of Illinois and its principal place of business is Illinois, Paumanock would presumably file its suit to enforce the Bermuda judgment in a state or federal court in Illinois. *See, e.g., La Societe Anonyme Goro v. Conveyor Accessories, Inc.,* 286 Ill.App.3d 867, 222 Ill.Dec. 217, 218, 677 N.E.2d 30, 31 (1997) (discussing Illinois Uniform Foreign Money–Judgments Recognition Act, 735 ILCS 5/12–618 through 12–626); *Ingersoll Milling Machine Co. v. Granger,* 833 F.2d 680, 686–87 (7th Cir.1987) (same). Under Illinois law, "a final judgment rendered on the merits by a court of competent jurisdiction is conclusive as to the rights of the parties and their privies and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand, or cause of action." *In re Marriage of Mesecher,* 272 Ill.App.3d 73, 208 Ill.Dec. 837, 839, 650 N.E.2d 294, 296 (1995) (quotations omitted). *"Res Judicata* will not operate to preclude a subsequent suit unless there is an identity of parties or privity. Privity exists between parties who adequately represent the same legal interests. It is the identity of interest that controls in determining privity, not the nominal identity of the parties." *Id.* (quotations and citations omitted).

In this case, we believe that Paumanock is in privity with Northrop Grumman. Nor-

throp Grumman owns a twenty percent interest in Paumanock's suit against Virginia Surety. Northrop Grumman's interest is, by definition, therefore completely identical to Paumanock's interest-they share the same cause of action against the same defendants in the same litigation. *See Bonanno v. La Salle and Bureau County R.R.,* 87 Ill.App.3d 988, 42 Ill.Dec. 866, 870, 409 N.E.2d 481, 485 (1980) ("Privity contemplates a mutual or successive relationship to the same property rights which were the subject matter of prior litigation." (quotations omitted)). Because a judgment in favor of Virginia Surety in the instant suit would act as res judicata and bind Paumanock in a future enforcement suit, allowing Virginia Surety to avoid payment of a potential $14,000,000 judgment, we conclude that the remedy sought in the instant suit is sufficient to confer standing on Virginia Surety to bring this suit.

### III.

■ While Virginia Surety has standing to bring this suit, we conclude that the district court properly dismissed the case because of Virginia Surety's failure to join Paumanock. "Whether a non-party is 'indispensable' is determined by application of Federal Rule of Civil Procedure 19." *Confederated Tribes of the Chehalis Indian Reservation v. Lujan,* 928 F.2d 1496, 1498 (9th Cir.1991). The application of Rule 19

> entails a practical two-step inquiry. First, a court must determine whether an absent party should be joined as a "necessary party" under subsection (a). Second, if the court concludes that the nonparty is necessary and cannot be joined for practical or jurisdictional reasons, it must then determine under subsection (b) whether in "equity and good conscience" the action should be dismissed because the nonparty is "indispensable."

*Northrop Corp. v. McDonnell Douglas Corp.,* 705 F.2d 1030, 1042 (9th Cir.1983) (footnote omitted).

> Rule 19 provides:
>
> (a) Persons to Be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party

in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) *the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest* or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. . . .

(b) Determination by Court Whenever Joinder Not Feasible. *If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable.* The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed.R.Civ.P. 19 (emphasis added). The analysis under Rule 19 "is heavily influenced by the facts and circumstances of each case," *Pit River Home and Agric. Co-op Ass'n v. United States,* 30 F.3d 1088, 1098 (9th Cir.1994) (quotations and citation omitted), and this Court reviews the district court's decision to dismiss a case under Rule 19 for an abuse of discretion. *Confederated Tribes,* 928 F.2d at 1498.

We agree with the district court that, under Rule 19(a)(2)(i), Paumanock is a necessary party to this action. *See* Appellant's Excerpts of R. at 177 (finding by district court). Paumanock, a signatory to the UMA, is the plaintiff seeking damages from Virginia Surety in Bermuda court. Virginia Surety's ultimate goal in this litigation is to prevent Paumanock from enforcing any judgment Paumanock might receive in the Bermuda court-a goal which, as we have discussed above, could be achieved through success in the instant suit despite Paumanock's absence. Barring Paumanock's recovery under ˙a judgment from the Bermuda court would clearly "impair or impede" Paumanock's interest in this matter, Fed.R.Civ.P. 19(a)(2)(i), and Paumanock is therefore a necessary party.

We also conclude that, under Rule 19(b), the district court properly held that Paumanock is an indispensable party. *See* Appellant's Excerpts of R. at 179–80 (finding by district court). Virginia Surety seeks a declaration of rights under the UMA with Paumanock; as this Court has explained, "[n]o procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable." *Lomayaktewa v. Hathaway,* 520 F.2d 1324, 1325 (9th Cir.1975).

The Rule 19(b) factors strongly support our conclusion that Paumanock is an indispensable party. First, not only does Paumanock face prejudice if this case proceeds in its absence, but Virginia Surety's strategy in bringing suit was to prejudice Paumanock. When Virginia Surety was informed that suit was to be filed in Bermuda, it rushed to a federal court half-way around the world to file the instant suit. Because Paumanock could not itself be sued in the United States, Virginia Surety sued an available surrogate, thereby forcing Paumanock to submit to United States jurisdiction voluntarily, *see* Tr. of Mot. Hr'g at 10 (statement by counsel for Virginia Surety) ("it's up to Pomenac [sic] to intervene in this action"), or be bound in its absence by a judgment against Northrop Grumman. *See id.* at 8–9. Further, the only way to lessen this prejudice to Paumanock without dismissing Virginia Surety's suit would be to specify that the judgment would not be binding against Paumanock. To do so, however, would strip the remedy of any meaning, and would consequently defeat Virginia Surety's standing.

Finally, there is ongoing litigation in Bermuda involving both Paumanock and Virginia Surety. Despite Virginia Surety's efforts to forum shop, Bermuda does not seem to be an unusual place to litigate a dispute regarding

the UMA. The UMA explicitly contains a Bermuda choice-of-law clause, binding the parties to adjudication under Bermuda law. Bermuda is where the UMA was signed and where it was to be performed. Bermuda is where the two named parties to the UMA are domiciled, and it is where virtually all of the witnesses and documents regarding the UMA are located. In light of this ongoing action, we conclude that Virginia Surety has an adequate remedy available despite the dismissal of the instant suit.

In the circumstances of this case, the district court did not abuse its discretion in finding that, in "equity and good conscience," this case should properly be dismissed. *See* Fed. R. 4 Civ. P. 19(b). Accordingly, we affirm.[4]

AFFIRMED.

[4.] Virginia Surety also contends that the district court erred in disallowing Virginia Surety from filing an amended complaint. Any adjudication of Virginia Surety's rights under the UMA requires Paumanock's presence, however, and any amendments to the complaint would be futile. Accordingly, the district court did not err in dismissing the complaint without leave to amend. *See Bloom v. Martin*, 77 F.3d 318, 321 (9th Cir.1996).