**Victor GAETAN, et al., Appellants,**

v.

**John H. WEBER, et al., Appellees.**

No. 97–CV–1288.

District of Columbia Court of Appeals.

Argued April 21, 1999.

Decided May 27, 1999.

Charles F. Gormly, Alexandria, VA, for appellants.

Stephen A. Horvath, Fairfax, VA, for appellees.

Before SCHWELB and REID, Associate Judges, and MACK, Senior Judge.

MACK, Senior Judge:

Appellants filed suit against appellees alleging negligence nuisance, and trespass as a result of structural changes to appellees' property. Midway through appellants' case-in-chief, the court *sua sponte* questioned appellants' standing. After hearing argument by both sides, the court entered a directed verdict in favor of appellees pursuant to Super.Ct.Civ.R. 50(a). On appeal, appellants challenge the court's standing determination, its denial of their motion to amend claims one month prior to trial, and the denial of their motion to amend or alter the directed verdict. We affirm in part, reverse in part, and remand.

## I.

Ms. Martine Loufti, a friend and family member of appellants, purchased property located at 2106 R Street, N.W. ("the property") in 1986. Appellants occupied the second and third floors of this building, utilizing part of the space as an art gallery and part as living quarters. Allegedly, Ms. Loufti purchased the property with the intent that, once the art gallery was prosperous, appellants would obtain sole ownership. On December 27, 1995, Ms. Loufti sold the property to appellants.

Prior to the transfer of ownership, appellants filed a complaint in Superior Court alleging negligence, nuisance, and trespass against the appellees, John and Cynthia Weber, who lived next door. The complaint alleged property damage caused by a staircase the Webers' attached to a "common wall" and other repairs allegedly affecting the property. Appellants also named Gallery Townhouse Condominium Association as a defendant and later amended their complaint to include a claim of negligence *per se*.

Throughout litigation, up to and including the filing of the joint pretrial state-

ment, all parties referred to the subject wall as being commonly owned by both appellants and appellees. After the filing of the pretrial statement, but prior to the pretrial conference, appellants secured new counsel. After further investigations, new counsel sought to amend the pretrial statement and claim that the wall was owned solely by appellants. Appellants' new counsel also sought to add forty new documents as possible exhibits for trial. The court denied appellants' motion to amend, holding them bound to proceed according to the pretrial statement and on the legal theories advanced throughout the course of litigation.

Trial commenced on May 7, 1997. On May 8th, while appellants were attempting to admit evidence of repair bills, the trial court *sua sponte* raised the question of whether they had standing to bring their action. Specifically, the court focused on appellants' relationship to the property prior to December 27, 1995, when the action commenced. In the complaint and throughout discovery, appellants were referred to as tenants. The court expressed concern that, as tenants, appellants could not recover for damages to real property. In response, appellants proffered that they possessed an ownership interest prior to the actual transfer and requested a recess to find supporting case law.

On May 9, 1997, the court reconvened. Appellants presented a document allegedly conveying an equitable ownership interest in the property prior to the December 27, 1995 transfer and advanced numerous alternative theories to create standing. After a recess, the court rejected all of appellants' theories regarding an ownership interest, noting that they "filed a complaint as tenants, describ[ed] themselves as tenants, amended that complaint and continued to describe themselves as ten-

ants" up to trial. The court concluded, "I cannot find an interest cognizable at law that ... results in a claim or a remedy for [appellants]. There is no cognizable relationship to the property at the time of the alleged damage." The court then entered a directed verdict in favor of appellees. Appellants' subsequent attempts to alter or amend the judgment were denied and this appeal followed.

## II.

### STANDING

■ Appellants must have standing to proceed with this action. *Virginia Sur. Co. v. Northrop Grumman Corp.*, 144 F.3d 1243, 1245 (9th Cir.1998) (quoting *San Diego County Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1124 (9th Cir.1996)). Whether appellants have standing is a question of law reviewed *de novo*; however, underlying factual determinations are reviewed under the clearly erroneous standard. *San Diego County, supra*, 98 F.3d at 1124. We review a court's decision to grant a directed verdict *de novo*. *Washington Metro. Area Transit Auth. v. Jeanty*, 718 A.2d 172, 174 (D.C.1998).

■ Appellants contend that they possess a "true, beneficial [ownership] interest in the property" which grants them standing. Alternatively, they contend that as tenants they have standing to sue. The trial court found insufficient evidence of an ownership interest and concluded that as tenants they could not recover damages to real property.[1] We conclude as a matter of law that tenants have standing to sue for negligence, nuisance and/or trespass, and we thus reverse the trial court without considering its factual determination regarding an ownership interest.[2]

---

1. Appellees contend the court's decision to question standing was not *sua sponte* but, rather, at their insistence. Regardless, standing is a jurisdictional issue which the court may raise at any time. *Speyer v. Barry*, 588 A.2d 1147, 1159 n. 24 (D.C.1991) ("[l]ack of

standing may be raised at any time.") (citations omitted).

2. Because of our conclusion, we also do not reach appellants' claim that the denial of their motion to amend or alter the directed verdict

Tenants have standing to sue third parties for damages arising from negligence, nuisance and trespass. *See Weinman v. De Palma,* 232 U.S. 571, 575, 34 S.Ct. 370, 58 L.Ed. 733 (1914) (tenant may sue landlord and third party contractor for damages caused by negligence and trespass); 8 THOMPSON ON REAL PROPERTY, THOMAS EDITION § 68.06(a)(1), at 199 (David A. Thomas ed., 1994) ("[P]ossession rather than ownership is the key requirement" for a claim of trespass.); W. PAGE KEETON, *et. al.,* PROSSER AND KEETON ON THE LAW OF TORTS § 87, at 621 (5th ed.1984) (action for private nuisance available to tenants); RESTATEMENT (SECOND) OF PROPERTY: LANDLORD & TENANT § 12.2 cmt. g (1977) ("[T]he tenant and the landlord each may be entitled to recover for the damage to their respective interests in the leased property."). While a tenant lacks the requisite ownership interest to recover damages to real property, *see Wentworth v. Air Line Pilots Ass'n,* 336 A.2d 542, 543–45 (D.C.1975) (stating general rule for measuring damages to real property), a tenant may nonetheless bring suit against third parties to recover damages which he or she has incurred. *See, e.g., Hanna v. Fletcher,* 97 U.S.App.D.C. 310, 231 F.2d 469, *cert. denied,* 351 U.S. 989, 76 S.Ct. 1051, 100 L.Ed. 1501 (1956) (contractor liable to tenant under theory of negligence for personal injuries). Accordingly, the loss of use and enjoyment of one's property (*i.e.* nuisance) and/or out-of-pocket expenses for repairs affect a tenant's interests and, therefore, may be compensable. *See* Standardized Civil Jury Instructions for the District of Columbia, No. 15–4 (1998 Rev.). *But see* RESTATEMENT (SECOND) OF PROPERTY, *supra,* § 11.2 cmt. f (tenant may not recover repair expenses *and* obtain rent abatement from landlord).

Finally, although tenants cannot recover damages to real property, trespass is a continuous tort giving rise to successive causes of action until the trespass has ended. *John McShain, Inc. v. L'Enfant Plaza Properties, Inc.,* 402 A.2d 1222, 1224 (D.C.1979) (citation omitted). Assuming *arguendo* appellants had no ownership interest prior to December 27, 1995, they may nonetheless recover real property damages arising post transfer as a result of a continuing trespass.

Accordingly, the decision of the court to enter a directed verdict for lack of standing is reversed and this case remanded for further proceeding.

## III.

## LEAVE TO AMEND

Leave to amend should be "freely given when justice so requires." Super.Ct.Civ.R. 15(a). "Absent a clear showing of an abuse of discretion, the trial court's exercise of its discretion either way will not be disturbed on appeal." *Johnson v. Fairfax Village Condominium IV Unit Owners Ass'n,* 641 A.2d 495, 501 (D.C. 1994) (citations omitted). Factors to consider when ruling on a motion to amend are: "(1) the number of requests to amend; (2) the length of time that the trial has been pending; (3) the presence of bad faith or dilatory reasons for the request; (4) the merit of the proffered amended pleading; and (5) any prejudice to the nonmoving party." *Id.* (citations omitted).

In the case at bar, one month prior to trial and after filing a joint pretrial statement, appellants sought to amend an allegation "central to the issues of liability" and admit more than forty newly identified documents into evidence. The trial court denied appellants' request. To do otherwise would have caused significant judicial delay and severely prejudiced the appellees who had spent significant

---

was erroneous. *See Guerra v. District of Columbia Rental Housing Comm'n,* 501 A.2d 786, 787 (D.C.1985) (not necessary to consider all claims of error upon decision to reverse).

time and expense during two years of litigation to defend against appellants' assertions. Under the circumstance of this case, the court did not abuse its discretion. Accordingly, we affirm the court's denial of appellants' motion to amend, but note that upon remand the court is free in its discretion to consider anew such a motion if warranted by changed circumstances.

*So ordered.*