**In re HEARTLAND FOOD AND DAIRY DISTRIBUTORS, INC., Debtors.**

**Land–O–Sun Dairies, L.L.C., Plaintiffs,**

**v.**

**Heartland Food and Dairy Distributors, Inc., William E. Cross, and Tim A. Pribble, Defendants.**

**Bankruptcy No. 99–40832.
Adversary No. 99–4122.**

United States Bankruptcy Court, S.D. Illinois.

Sept. 1, 2000.

**34**

Bernard A. Reinert, John W. Rourke, Reiner & Rourke, P.C., St. Louis, MO, for plaintiff.

Pamela Lacey, Benton, IL, for defendant.

## OPINION

KENNETH J. MEYERS, Bankruptcy Judge.

This case involves milk that soured and spoiled a business relationship. Plaintiff, a supplier of milk to defendant, Heartland Food and Dairy Distributors, Inc. ("Heartland"), filed suit in state court seeking damages for Heartland's alleged breach of the parties' contract. Heartland counterclaimed, alleging that the plaintiff supplied it with unfit milk that was distributed to Heartland's school customers, resulting in loss of Heartland's contracts with such customers.

The case was removed to this Court after two of the defendants, Heartland and William Cross ("Cross"), filed Chapter 7

---

1. The third defendant, Tim Pribble ("Pribble"), has not filed a bankruptcy case.

2. Correspondence between the parties and other documents in the record repeatedly refer to Inc. For example, the credit applications that form the basis for the contractual relationship on which the complaint is grounded bear the letterhead of Inc. and Inc.

bankruptcy petitions.[1] At the time of removal, a motion to reconsider was pending in which the defendants sought reconsideration of the state court's order denying their motion to dismiss the plaintiff's complaint under the doctrine of *res judicata.* Following removal, the defendants have asked this Court to rule on the motion to reconsider.

Given the convoluted facts of this case, the Court must outline them in detail. In October 1996, plaintiff, Land–O–Sun Dairies, L.L.C. ("L.L.C.") was formed as a Delaware limited liability company. Later that month, L.L.C. entered into a Capital Contribution and Assumption Agreement with Land–O–Sun Dairies, Inc. ("Inc.") in which Inc. transferred substantially all its assets to L.L.C. and L.L.C. assumed Inc.'s liabilities. As part of the transaction, Inc. became a member of L.L.C. and retained an ownership interest in it.

In mid–1997, Heartland and its principals, Cross and Pribble, entered into an agreement—presumably with L.L.C., although the facts are ambiguous on this point[2]—to purchase dairy products on credit for distribution to various schools. Subsequently, there was a breakdown of the parties' relationship, and L.L.C. hired an attorney to file suit against the defendants. In December 1997, the attorney filed an action naming Inc. as plaintiff, rather than L.L.C. This was unfortunate from L.L.C.'s perspective, not only because its own lawyer had misidentified the intended plaintiff, but also because, although Inc. was a going concern at the time, it was not a corporation in good standing to transact business in Illinois.

The defendants filed a motion to dismiss under 735 Ill.Comp.Stat. 5/2–619(a)(2)

is referred to as the "vendor" on price sheets that post-date the transfer of its assets to L.L.C. In addition, for some period of time, L.L.C.'s former counsel appears to have believed his client was Inc., as reflected by his correspondence and by pleadings he filed in state court.

based on Inc.'s lack of legal capacity to bring suit.[3] However, rather than voluntarily dismissing the complaint, L.L.C.'s attorney asserted that he had inadvertently used the wrong name for the plaintiff and attempted to amend the complaint to substitute L.L.C. as the party plaintiff. The state court judge denied the motion to amend and dismissed the complaint due to Inc.'s legal incapacity to sue in Illinois. The order of dismissal contained no qualifying language, as plaintiff's attorney did not prevail upon the state court judge to specify that L.L.C., the real party in interest, could file a new complaint in the correct name.

L.L.C. is now represented by counsel different from the attorney who represented it in state court. Current counsel argues in this Court that the state court judge commented that L.L.C. could file its own lawsuit following the dismissal of Inc.'s lawsuit. However, the written order is not so qualified and, despite being afforded an opportunity to do so by this Court, L.L.C. has provided no evidence to prove that this statement was made. L.L.C.'s current counsel lacks personal knowledge of the matter, and defendants' counsel, who was present for the earlier proceedings, indicates that she does not recall the state court judge advising the plaintiff how to conduct its case.

The order denying the motion to amend and dismissing the complaint was entered on March 6, 1998, and was not appealed by either Inc. or L.L.C. Instead, on March 9, 1998, L.L.C. filed a new complaint against the defendants in state court that, other than the plaintiff's name and its description, was virtually identical to the earlier dismissed complaint. The new complaint was assigned to a different judge than the one who had earlier dismissed Inc.'s complaint.

The defendants moved to dismiss L.L.C.'s complaint, arguing that the involuntary dismissal of the earlier complaint had *res judicata* effect. The state court judge newly assigned to the case denied the motion to dismiss, finding that there had been no prior adjudication on the merits.[4] *See* Ord.Den.Mot.Dis., Frank. Co. Cir.Ct., Dec. 1, 1998. Subsequently, the state court denied the defendants' motion to reconsider. In its order, the court noted that its denial of the defendants' motion was based on consideration of "applicable case law" as well as statutory and procedural authority. *See* Ord.Den.Mot. Reconsid., Frank. Co. Cir.Ct., Jan. 21, 1999. The defendants then filed a second motion for reconsideration in which they asserted that two of the cases cited by plaintiff as showing that *res judicata* did not bar the present case had been reversed by the Illinois Supreme Court. In their motion, the defendants again sought dismissal of the plaintiff's complaint on *res judicata* grounds.

The defendants' motion for reconsideration is now before this Court by virtue of removal of the plaintiff's case. In ruling on this motion, the Court must determine whether, under applicable Illinois authority regarding the *res judicata* effect of plaintiff's previous dismissal, the present case may be said to be barred under the doctrine of *res judicata*.

 The doctrine of *res judicata* precludes repetitive litigation of the same cause of action between the same parties. When applicable, it operates to bar relitigation of every matter that was actually determined in the prior suit, as well as

---

**3.** Section 2–619(a)(2) providing for "[i]nvoluntary dismissal based upon certain defects or defenses," states in pertinent part:
 (a) Defendant may, within the time for pleading, file a motion for dismissal of the action ... upon any of the following grounds[:]
 . . . .

 (2) That the plaintiff does not have legal capacity to sue. . . .
735 ILCS 5/2–619(a)(2).

**4.** Since this ruling was from a different judge, it has no bearing on whether the original judge intended the dismissal to be an adjudication on the merits.

every other matter that could have been raised and determined. *Torcasso v. Standard Outdoor Sales, Inc.*, 157 Ill.2d 484, 193 Ill.Dec. 192, 626 N.E.2d 225, 228 (1993); *In re Marriage of Mesecher*, 272 Ill.App.3d 73, 208 Ill.Dec. 837, 650 N.E.2d 294, 296 (1995). For *res judicata* to apply, the party asserting the doctrine must prove three elements: (1) identity of the parties or their privies; (2) identity of the causes of action; and (3) an adjudication on the merits by a court of competent jurisdiction. *Rein v. David A. Noyes & Co.*, 172 Ill.2d 325, 216 Ill.Dec. 642, 665 N.E.2d 1199, 1204 (1996). Here, the parties agree that the subject matter of the instant lawsuit is identical to the earlier, dismissed one, leaving the Court to decide only if the other two elements are met.

 In order to prevail on the element of identity of parties, the party asserting it need not prove absolute identity of the parties. It is enough to show that the parties are in privity with each other because they adequately represent the same legal interests. *See In re Marriage of Mesecher*, 208 Ill.Dec. 837, 650 N.E.2d at 296. Moreover, it is the identity of interest that controls whether privity exists, rather than the nominal identity of the parties. *Id.*

 In this case, the Court finds that the defendants have met their burden of showing that L.L.C. participated in the initial litigation and that it was in privity with the nominal plaintiff, Inc. The record reflects that plaintiff's former counsel was retained by, and represented the interests of, L.L.C. during the first lawsuit despite the fact that the nominal plaintiff was Inc., who was also represented by former counsel. L.L.C.'s present counsel stated on the record that former counsel was retained by L.L.C. to prosecute the original lawsuit and that his filing the complaint in Inc.'s name was an unauthorized mistake. The record indicates further that when former counsel realized the mistake, he filed pleadings in which the nominal plaintiff, Inc., sought to amend the complaint so the named plaintiff could be corrected to L.L.C. There is no doubt that former counsel was representing L.L.C.'s interests during these initial proceedings and that Inc. was serving as a proxy for L.L.C. Since L.L.C. was the real party in interest in the first lawsuit, the element of identity of parties for *res judicata* purposes has been met.[5]

In addition, the record reveals that L.L.C. and Inc., although separate entities in a technical sense, were not complying with the formalities necessary for each to maintain a separate business existence. This is reflected on numerous documents throughout the record—including the credit documents purportedly binding the defendants to L.L.C.—that show L.L.C. conducting business using Inc.'s letterhead. The suspension of business formalities was of sufficient degree that it caused even L.L.C.'s own counsel to be confused about which entity was his client. Such confusion is reflected in his correspondence to the defendants and in his filing the original complaint in Inc.'s name. Given the in-

---

**5.** L.L.C., citing *Diversified Financial Systems, Inc. v. Boyd*, 286 Ill.App.3d 911, 222 Ill.Dec. 696, 678 N.E.2d 308 (1997), argues that a privy for *res judicata* purposes is one who, after commencement of litigation, acquires an interest in the subject matter of the litigation through one of the parties. Plaintiff contends that under this more restrictive definition, Inc. and L.L.C. cannot be privies since they entered into the Capital Contribution and Assumption Agreement long before the litigation against Heartland began. L.L.C.'s argument, however, misconstrues the holding in *Diversified*. Although the case involved the assignment of an interest in certain notes after litigation commenced, the court's decision did not depend on the timing of the assignment. Instead, the *Diversified* court defined privity as this Court has, as existing between parties who adequately represent the same legal interests, 222 Ill.Dec. 696, 678 N.E.2d at 311, and examined whether there was "substantial identity of the incentives of the earlier party with those of the party against whom *res judicata* is asserted." *Id.* at 312. Although privity was found not to exist between the parties in *Diversified*, the definition set forth in the case is consistent with this Court's.

tertwining of their business practices, and the congruity of their interest in having L.L.C. substituted for Inc. in the original lawsuit, the Court finds that privity exists between the two entities.[6]

■ A more difficult question is whether there was an adjudication on the merits in the original action to preclude L.L.C. from proceeding against the defendants now. The answer to this question is found in Rule 273 of the Illinois Supreme Court. The Illinois Supreme Court adopted Rule 273 effective January 1, 1967, *see People ex rel. Johnson v. City of Waukegan*, 35 Ill.App.3d 713, 342 N.E.2d 480, 484 (1976), as a means "to curb the number of times a plaintiff can resurrect a dismissed action." *DeLuna v. Treister*, 185 Ill.2d 565, 236 Ill.Dec. 754, 708 N.E.2d 340, 345 (1999). The rule states:

> Unless the order of dismissal or a statute of this State otherwise specifies, an involuntary dismissal of an action, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join an indispensable party, *operates as an adjudication upon the merits.*

Sup.Ct.R. 273, Ill.Comp.Stat.Ann. (West 1993) (emphasis added).

■■ Under the plain language of Rule 273, an involuntary dismissal, for a reason not expressly excepted by the rule, is deemed an adjudication on the merits unless the plaintiff procures leave of court to refile the complaint or a statute guarantees that opportunity to the plaintiff. *DeLuna v. Treister*, 236 Ill.Dec. 754, 708 N.E.2d at 345. In the case at bar, the original complaint was dismissed pursuant to 735 ILCS 5/2–619(a)(2), and L.L.C. does not challenge the applicability of Rule 273 to a dismissal under that section. *See Rein v. David A. Noyes & Co.*, 216 Ill.Dec. 642, 665 N.E.2d at 1204 (holding that Rule 273 applies to an involuntary dismissal under § 2–619). The basis for the dismissal—Inc.'s lack of legal capacity to sue—does not fall within those reasons for dismissal specifically excepted by the Rule from effecting an adjudication on the merits. Moreover, there is no qualifying language in the order of dismissal to protect the plaintiff from the effects of Rule 273, and the Court is aware of no statute that would do so. The straightforward application of Rule 273, therefore, demands that the dismissal be deemed a dismissal on the merits.[7] *See DeLuna v. Treister*, 236 Ill. Dec. 754, 708 N.E.2d at 344–45.

■ L.L.C., seeking to avoid this result, asserts that the state court's dismissal of the suit filed by Inc. was based on lack of standing to sue, which, it contends, does not constitute an adjudication on the merits under Illinois law. In support, L.L.C. cites two cases, neither of which addresses Supreme Court Rule 213 or explains why, under the plain terms of that rule, a dismissal for lack of standing would not constitute an adjudication on the merits.[8] By

---

**6.** As further evidence that the entities are not strangers to each other, the Court notes that Allen A. Meyer, the Chief Executive Officer of Inc., executed and filed the Certificate of Formation to create L.L.C. under Delaware law, and Inc. remains a member of L.L.C. Additionally, due to his use of both Inc.'s and L.L.C.'s letterhead, the Court is unable to determine if Terry A. Tregear, Division Sales Manager, is employed by Inc., or L.L.C., or both.

**7.** Because, as set forth above, L.L.C. was present and represented fully in the original lawsuit, this case is not one in which a court might look behind the unambiguous language of Rule 273. *See DeLuna v. Treister*, 236

Ill.Dec. 754, 708 N.E.2d at 347. In *DeLuna*, the Illinois Supreme Court specified that where there is an identity of parties in two separate lawsuits, "whether an adjudication on the merits actually occurred is determined by applying Rule 273 according to its plain terms." *DeLuna*, 708 N.E.2d at 347; *see also Leow v. A & B Freight Line, Inc.*, 175 Ill.2d 176, 222 Ill.Dec. 80, 676 N.E.2d 1284, 1290 (1997) (McMorrow, J., specially concurring).

**8.** Indeed, in the first case, *People ex rel. Scott v. Chicago Park Dist.*, 66 Ill.2d 65, 4 Ill.Dec. 660, 360 N.E.2d 773 (1976), it appears the dismissal in question occurred prior to the adoption of Rule 273, as the judgment of dismissal was affirmed in 1966, *see Scott*, 360

contrast, other Illinois cases hold that a dismissal for lack of standing constitutes an adjudication on the merits due to the operation of Rule 273. *See People ex rel. Howarth v. Gulf, Mobile, & Ohio R.R. Co.,* 125 Ill.App.2d 473, 261 N.E.2d 221, 221–22 (1970); *see also Matter of Estate of Keener,* 167 Ill.App.3d 270, 118 Ill.Dec. 164, 521 N.E.2d 232, 233, *appeal denied,* 122 Ill.2d 575, 125 Ill.Dec. 218, 530 N.E.2d 246 (1988). Given the lack of definitive authority otherwise—and given the Illinois Supreme Court's careful adherence to the plain terms of Rule 273 in recent cases— *see DeLuna,* 236 Ill.Dec. 754, 708 N.E.2d at 345, 347; *River Park Inc. v. City of Highland Park,* 184 Ill.2d 290, 234 Ill.Dec. 783, 703 N.E.2d 883, 889–91 (1998), the Court finds no basis upon which to question the application of Rule 273 in the present case.[9]

L.L.C. further contends that former counsel's error in filing the first lawsuit in the name of Inc. was an easily correctable mistake and should not have resulted in dismissal by the state court. In support, L.L.C. cites the Illinois statute dealing with misnamed parties, which states that

> [m]isnomer of a party is not a ground for dismissal[,] but the name of any party may be corrected at any time, . . .

upon any terms and proof that the court requires.

735 Ill.Comp.Stat. 5/2–401(b). L.L.C. asserts "[Inc.] was clearly a misnamed party in the first suit" and argues that this mistake was corrected by L.L.C.'s filing the second suit, which, according to L.L.C., was made necessary by the state court's order of dismissal "without granting leave to amend as it should have." *See* Pltf.'s Supp.Mem.Opp. Def's Mot. to Recons., filed June 15, 2000, Doc. # 21, at 4. L.L.C. maintains that *res judicata* should not be applied "to dismiss the second suit stemming from the dismissal of the first," *id.* at 4–5, and urges this Court to prevent injustice by allowing L.L.C. to continue its lawsuit against the defendants.

By its argument, L.L.C. is essentially asking this Court review the state court's order dismissing Inc.'s lawsuit and override the effect of that dismissal. However, this Court precluded from re-examining the merits of the state court's ruling in the suit filed by Inc. under the *Rooker–Feldman* doctrine, which dictates that inferior federal courts lack jurisdiction to review final decisions of state courts.[10] *Levin v. Attorney Registration and Disciplinary Comm'n of Supreme Court of Illinois,* 74 F.3d 763, 766 (7th

---

N.E.2d at 775, a date preceding the rule's effective date of January 1, 1967. The second case cites only *Scott* in support of its statement that a dismissal for lack of standing is not an adjudication on the merits, *see Pierce v. P.J.G. & Assocs., Inc.,* 128 Ill.App.3d 471, 83 Ill.Dec. 676, 470 N.E.2d 1096, 1097 (1984), *rev'd on other grounds,* 112 Ill.2d 535, 98 Ill.Dec. 360, 494 N.E.2d 482 (1986), and, in fact, this issue plays only a peripheral role in the court's decision.

**9.** The Court, moreover, disagrees with L.L.C.'s assertion that the state court's dismissal was for lack of standing. The state court dismissed the suit by Inc., not because of Inc.'s lack of standing to seek the relief requested, but because Inc., as a corporation out of compliance with the state's reporting and tax requirements, lacked legal capacity to bring the action in Illinois courts. "Lack of standing" and "lack of legal capacity to sue" are distinct concepts: "standing to sue" ex-

amines whether a "party has sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy," *see* Black's Law Dictionary 1405 (6th ed.1990), while "capacity to sue" is determined by a party's "[l]egal qualification . . . , competency, power or fitness" to sue. *Id.* at 207. Thus, L.L.C. has mischaracterized the nature of the state court's dismissal.

**10.** The *Rooker–Feldman* doctrine, set forth in *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), is derived from 28 U.S.C. § 1257, which provides that "[f]inal judgments . . . rendered by the highest court of a state . . . may be reviewed by the Supreme Court. . . ." This language was construed as preventing any federal court except the Supreme Court from reviewing final state court judgments. *See Feldman,* 460 U.S. at 476, 103 S.Ct. 1303.

Cir.1996); *see In re Singleton*, 230 B.R. 533, 536–37 (6th Cir. BAP 1999) *Rooker–Feldman* establishes that the losing party in a state court lawsuit cannot collaterally attack that court's ruling in federal court. Rather, the litigant's remedy lies in the state court system and its appellate process. *See In re Herrera*, 194 B.R. 178, 186 n. 3 (Bankr.N.D.Ill.1996).

 In this case, former counsel's error in naming the plaintiff in the first state court suit may have been, as L.L.C. contends, easily correctable under the Illinois misnomer statute. However, this Court is not allowed to take account of that statute in ruling on the *res judicata* defense now at issue. No appeal was taken from the state court's adverse ruling on counsel's motion to amend in that case, and the state court's involuntary dismissal of the suit filed by Inc. became final. This order can neither be altered nor effectively overruled in the present lawsuit filed by L.L.C., as the Court is bound to give it full faith and credit as a final state court ruling. *See Torres v. Rebarchak*, 814 F.2d 1219, 1222 (7th Cir.1987); *Harl v. City of La Salle*, 679 F.2d 123, 125 (7th Cir.1982). Thus, any error occurring in the first lawsuit, whether on the part of counsel or the state court judge, may not now be cited as a basis for overcoming the defendants' arguments of *res judicata*.

The Court emphasizes that L.L.C. was not without options to avoid this adverse result. Former counsel in the first lawsuit had nearly a two-month warning that the defendants sought an involuntary dismissal and should have been aware of the ramifications of Rule 273. Yet, when it became obvious that Inc. lacked legal capacity to sue in Illinois, counsel failed to voluntarily dismiss Inc.'s complaint and refile on behalf of L.L.C. This may have circumvented the unfortunate consequences seen here because a voluntary dismissal would have been without preclusive effect.[11] Moreover, even after former counsel chose a different strategy—seeking to amend the complaint—and was rebuffed by the state court judge, counsel could have sought qualifying language in the order of dismissal to protect L.L.C. from the effects of Rule 273. However, this was not done and the order became final. Nonetheless, even this was not a death knell for L.L.C. The plaintiff could have appealed the state court order, arguing that the judge erred in refusing to allow correction of the plaintiff's name to reflect the real party in interest and further erred in dismissing the complaint since the real party in interest had legal capacity to sue in Illinois. The plaintiff, though, failed to do so, opting instead to file a new complaint in L.L.C.'s name. Finally, when the matter was removed to this Court, L.L.C. was given an opportunity to present evidence of the state court judge's alleged statement that L.L.C. could file a new complaint following dismissal of the complaint filed by Inc. This Court might have ruled differently had such proof been presented, but L.L.C. failed to adduce any evidence on this point. The Court, therefore, finds that the earlier dismissal binds L.L.C. since its interests were represented in the first lawsuit and it had ample opportunity in that forum, albeit wasted, to raise its concerns with respect to the dismissal.

---

11. Under certain conditions, Illinois permits voluntary dismissal without prejudice before trial or hearing. The applicable statute states in part:

(a) The plaintiff may, at any time before trial or hearing begins, upon notice to each party who has appeared or each such party's attorney, and upon payment of costs, dismiss his or her action . . ., without prejudice, by order filed in the cause. 735 ILCS 5/2–1009(a).