*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

No. 22-FM-264

DANA PLEASANT, APPELLANT,

V.

JUSTIN GIBSON, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2020-DRB-1723)

(Hon. Darlene M. Soltys, Hon. Deborah J. Israel
& Hon. Rupa Ranga, Trial Judges)

(Submitted November 29, 2022                    Decided December 15, 2022)

*Shirley Diaz*, *Nicole M. Cleminshaw*, *Stephanie McClellan*, and *Marla Spindel* were on the brief for appellant.

Justin Gibson, *pro se*.

Before GLICKMAN, EASTERLY, and ALIKHAN, *Associate Judges*.

ALIKHAN, *Associate Judge*: Appellant Dana Pleasant challenges the trial court's conclusion that he did not have standing to intervene in the custody case concerning his minor grandchild, S.G., after S.G.'s mother passed away. We vacate and remand.

## I.     Factual and Procedural Background

S.G. is the child of Passion Pleasant and Justin Gibson.  Dana Pleasant is S.G.'s maternal grandfather.  S.G. lived with Ms. Pleasant and her half-siblings until Ms. Pleasant was tragically murdered.  Mr. Pleasant states that immediately after Ms. Pleasant's death, he moved into her apartment and assumed care of S.G.  Nine days after Ms. Pleasant's death, Mr. Pleasant filed an emergency motion to intervene and an emergency motion for temporary custody in S.G.'s preexisting custody case. In support of these motions, Mr. Pleasant stated that he was S.G.'s grandfather, that he had been her primary caregiver since Ms. Pleasant's death, and that he was "willing to continue to be [t]here and provide support."

Unbeknownst to Mr. Pleasant, Mr. Gibson had filed a motion for custody of S.G. five days before Mr. Pleasant moved to intervene.  Also unbeknownst to Mr. Pleasant, the trial court had scheduled a hearing to address the custody dispute for the day after Mr. Pleasant filed his motions.  Mr. Pleasant did not attend the hearing.  During the proceeding, the court tried to call Mr. Pleasant, but he did not answer his phone because, as he later explained, he was speaking with prosecutors about his daughter's homicide.

The court granted Mr. Gibson sole physical custody of S.G.  In the custody order entered after the hearing, the court denied Mr. Pleasant's motion to intervene

for lack of standing, stating that "[a]s a general rule, relatives of the child beyond the biological parents, such as grandparents, have no statutory or common law right to custody of or visitation with a minor child."

Mr. Pleasant then filed three emergency motions: an amended motion to intervene, an amended motion for temporary custody, and a motion to vacate the custody order. In the two amended motions, Mr. Pleasant recounted in more detail his reasons for intervention. Specifically, he alleged that Mr. Gibson had "rarely" been involved in S.G.'s life, and when he had been, he had "caused her trauma"; that Mr. Gibson has a substance-use disorder, four drug-related convictions, and a history of domestic violence; that Mr. Gibson breeds rodents and insects at his home and has forced S.G. to clean rodent cages, resulting in injury; and that S.G. had expressed that she did not want to go into Mr. Gibson's care. The trial court denied each of Mr. Pleasant's emergency motions, again concluding that Mr. Pleasant lacked standing to intervene in S.G.'s custody case.

Mr. Pleasant moved to vacate that order. The court again denied his motion, stating once more that he had not established standing to intervene. Specifically, the court determined that the allegations set out in Mr. Pleasant's emergency motion and attached affidavit did "not amount to a sufficiently exceptional circumstance to establish standing." The court remarked that "there is a rebuttable presumption that

custody with a parent is in a minor child's best interest," that Mr. Gibson was "available and willing to care for [S.G.]," and that it had "not made a finding rebutting the parental presumption." Thus, in the court's view, "no exceptional circumstance existed such that [Mr. Pleasant] had standing" when he filed his initial emergency motions. Mr. Pleasant filed a timely appeal.

## II. Standard of Review

"Whether appellant[] ha[s] standing is a question of law reviewed *de novo*; however, underlying factual determinations are reviewed under the clearly erroneous standard." *W.H. v. D.W.*, 78 A.3d 327, 336 (D.C. 2013) (quoting *Gaetan v. Weber*, 729 A.2d 895, 897 (D.C. 1999)).

## III. Discussion

District of Columbia law sets out a three-step process for a third party to obtain custody of a child. *See* D.C. Code § 16-831.01(5) (defining "[t]hird party" as "a person other than the child's parent or de facto parent"). At the first step, the third party must establish standing to intervene in the custody proceeding. *Id.* § 16-831.02(a)(1); *see B.J. v. R.W.*, 266 A.3d 213, 215, 217 (D.C. 2021). At the second step, he must rebut the presumption favoring parental custody by clear and convincing evidence unless there is parental consent to the third party's custody. D.C. Code §§ 16-831.06(a)(1), (b), 16-831.05(a); *see id.* § 16-831.07(a)(1) to (3).

And at the third and final step, the court must determine that third-party custody is in the child's best interests. *Id.* § 16-831.06(a)(2); *see id.* § 16-831.08. The three steps are distinct and sequential: the step-one standing inquiry presents "a threshold question of law that must be resolved prior to, and independently of, the merits of the case," *B.J.*, 266 A.3d at 215, and the court must find the parental presumption rebutted at step two before it can consider the best interests of the child at step three, D.C. Code § 16-831.07(d).

At the first step, Mr. Pleasant sought to establish standing under D.C. Code § 16-831.02(a)(1)(C). This subsection provides that "[a] third party may file a . . . motion to intervene in any existing action involving custody of the child" if "[t]he third party is living with the child," as Mr. Pleasant says he was at the time of his first motion, "and some exceptional circumstance exists such that [third-party custody] is necessary to prevent harm to the child." *Id.* But in concluding that Mr. Pleasant had not shown exceptional circumstances that warranted intervention, the trial court skipped ahead to the second step of the analysis, noting that it had "not made a finding rebutting the parental presumption." This was error, as the court improperly injected the parental presumption into the first step of the analysis.

Accordingly, we must vacate the trial court's order and remand for the court to reassess whether Mr. Pleasant has standing to intervene. At that first step of the

analysis, the court must decide—without considering the presumption in favor of Mr. Gibson's custody—whether Mr. Pleasant's motions set forth "some exceptional circumstance . . . such that relief . . . is necessary to prevent harm" to S.G. *Id.*; *cf. In re S.M.*, 985 A.2d 413, 420 (D.C. 2009) (remanding in a similar situation). Because D.C. Code § 16-831.02(a)(1)(C) requires the "motion [to] specify in detail why the relief is necessary to prevent harm to the child," we believe that the court can conduct the standing inquiry on the pleadings, taking the motions' factual allegations as true. *See, e.g.*, *W.H.*, 78 A.3d at 337 (basing standing on the fact that the movant had "alleged" the required "personal stake").[1] Such an approach is both faithful to the statute's text and consistent with its legislative history. *See* Safe and Stable Homes for Children and Youth Amendment Act of 2007, Report on Bill 17-41 before the Committee on Public Safety and the Judiciary, Council of the District of Columbia, at 6 (June 4, 2007) (explaining that "[i]f one of [D.C. Code § 16-831.02(a)(1)'s] criteria is specifically pleaded in a petition or motion[,] the third party may file for custody or intervene in an existing action for custody"); *id.* at 2 (stating the Council's intent to grant third-party standing to allow custody claims to be adjudicated on the merits).

---

[1] A parent who disputes the third party's basis for intervention may file a motion to dismiss under D.C. Code § 16-831.02(b)(1). Because Mr. Gibson did not file such a motion in the trial court, we decline to opine on that provision here.

If Mr. Pleasant succeeds in establishing standing to intervene, the court must then, and only then, consider whether he can rebut the parental presumption by clear and convincing evidence. D.C. Code § 16-831.06(a)(1), (b); *see id.* § 16-831.07. We recognize that this second inquiry may also involve consideration of "exceptional circumstances." *Id.* § 16-831.07(a)(1) to (3) (explaining that the parental presumption is rebutted if the court finds, by clear and convincing evidence, "(1) [t]hat the parents have abandoned the child or are unwilling or unable to care for the child; (2) [t]hat custody with a parent is or would be detrimental to the physical or emotional well-being of the child; or (3) *[t]hat exceptional circumstances, detailed in writing by the court, support rebuttal of the presumption favoring parental custody*" (emphasis added)). But an assessment of exceptional circumstances at this juncture is not merely a repeat of the step-one analysis. That is because, at step two of the inquiry, the court cannot rely on the allegations in the pleadings alone, but rather must make express findings of fact based on clear and convincing evidence. *Id.*; *see id.* §§ 16-831.06(b), 16-831.05(b) ("If the court grants custody of the child to a third party over parental objection, the court order shall include written findings of fact supporting the rebuttal of the parental presumption."), 16-831.04(b) (directing that any "order granting relief . . . shall be in writing and shall recite the findings upon which the order is based"). The two steps are thus distinct, and neither is superfluous.

If the trial court finds that Mr. Pleasant has carried his step-two burden of rebutting the parental presumption by clear and convincing evidence, the court should move to the third and final step of the analysis and assess S.G.'s best interests. *Id.* § 16-831.07(d); *see id.* §§ 16-831.08, 16-831.06(a)(2). Here, the court will find itself on familiar ground, as this is the standard applied in many child-welfare cases. *See, e.g., id.* §§ 16-2353(b) (termination of parental rights), 16-2383(d) (guardianship); *In re J.J.*, 111 A.3d 1038, 1044 (D.C. 2015) (adoption).

## IV. Conclusion

For the foregoing reasons, the judgment of the Superior Court is vacated, and the case is remanded for further proceedings.

*So ordered.*